**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 6, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

SHI LI ZHEN,

      Petitioner,

vs.

ALBERTO R. GONZALES, Attorney
General,

      Respondent.

No. 05-9532
(B.I.A. No. A29-810-788)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **BALDOCK**, and **MURPHY**, Circuit Judges.

Petitioner Shi Li Zhen, a citizen of China, petitions for review of a decision

by the Board of Immigration Appeals ("BIA") dismissing his appeal from the

denial of his application for asylum and a restriction on removal.[1]  In particular,

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1]The phrase "restriction on removal" was previously called "withholding of
removal" before Congress amended the Immigration and Nationality Act ("INA"),
8 U.S.C. § 1101, *et seq*., in the Illegal Immigration Reform and Immigrant
Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009.
While Mr. Zhen, the BIA, and the Immigration Judge ("IJ") all use the
"withholding" terminology, we refer to Mr. Zhen's second claim as seeking a
restriction on removal because his claim was filed after IIRIRA's effective date.

he contends that: (1) he is eligible for asylum because the Department of Homeland Security ("DHS") failed to properly charge him with an aggravated felony; (2) he is entitled to a restriction on removal because substantial evidence compels the conclusion that he will be fined, imprisoned or sterilized if removed to his homeland due to the practices of the Chinese government with regard to its one-child policy; and (3) the BIA failed to consider the entirety of the record by refusing to consider the affidavit of Mr. Aird, his expert. Our jurisdiction arises under 8 U.S.C. § 1252(a), and we affirm.

Background

Mr. Zhen is a national and citizen of the People's Republic of China. He illegally entered the United States in November of 1990. He applied for asylum, but his initial application was denied on December 11, 1991, and he was ordered deported. The BIA summarily dismissed Mr. Zhen's appeal of that decision ten days later. Nevertheless, Mr. Zhen remained in the country, and on June 1, 1993, he married his wife, Dan Hong Dong. Mr. Zhen and Ms. Dong have three children, two sons and a daughter. It appears that sometime around 1996, Mr. Zhen and his wife moved to Denver, where he began working at his brother-in-law's Chinese restaurant. In 1999, he became a part owner in the eatery. In November of 2001, Mr. Zhen was arrested by Immigration and Nationalization

Service ("INS") officials and charged with concealing and harboring illegal aliens – some of whom were his relatives. He pled guilty to one count of concealing and harboring illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(iii), and was sentenced by the court to his time served, which amounted to 233 days. From that point forward, Mr. Zhen has been in the custody of DHS. In April of 2004, Mr. Zhen moved to reopen his asylum proceedings based on "changed personal circumstances," viz., that his wife had been granted asylum.

## Discussion

An alien who fears persecution if deported to a particular country has two potential modes of relief under the INA – asylum and restriction on removal. Wiransane v. Ashcroft, 366 F.3d 889, 893 (10th Cir. 2004). If an alien is granted asylum, he is entitled to remain in this country. See 8 U.S.C. § 1158. On the other hand, if an alien is granted a restriction on removal, it simply prevents his deportation to the particular country where the persecution may occur. See 8 U.S.C. § 1231(b)(3). The decision of whether to grant asylum is within the discretion of the Attorney General, whereas a restriction on removal will be granted where the alien demonstrates a clear probability that his life or freedom would be threatened due to his race, religion, nationality, membership in a particular social group, or political opinion. See 8 U.S.C. § 1231(b)(3)(A);

Tulengkey v. Gonzales, 425 F.3d 1277, 1280 (10th Cir. 2005).

We review the BIA's legal determinations de novo, and its findings of fact under a substantial evidence standard. Yan v. Gonzalez, 438 F.3d 1249, 1251 (10th Cir. 2006). When we review under the substantial evidence standard, we are required "to guarantee that factual demonstrations are supported by reasonable, substantial and probative evidence considering the record as a whole." Niang v. Gonzalez, 422 F.3d 1187, 1196 (10th Cir. 2005) (internal quotations omitted). As such, an agency's factual determinations are conclusive unless the record indicates that "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).[2]

I.    Asylum

As noted above, Mr. Zhen pursued his initial request for asylum in 1990, and the subsequent denial and order of removal occurred in 1991. Ten years later, of course, he was convicted of harboring illegal aliens. In April 2004, Mr. Zhen moved to reopen his asylum proceedings based on "changed personal

---

[2]While we recognize that the REAL ID Act of 2005 includes new provisions relating to agency credibility determinations, codified at 8 U.S.C. §§ 1158(b)(1)(b)(iii), 1229(c)(4)(C), and 1231(b)(3)(C), these new provisions only apply to aliens applying for asylum or other relief after May 11, 2005, the effective date of the statute. See Pub. L. No. 109-13, div. B § 101(h)(2), 119 Stat. 231, 305. Mr. Zhen applied for a re-opening of his asylum and restriction on removal relief determination in April 2004, and as such, these new provisions are inapposite.

circumstances," viz., that his wife had been granted asylum. Mr. Zhen first contends that he must be formally charged by the DHS as an alien convicted of an aggravated felony before an IJ can determine that he is thereby barred from asylum eligibility. This contention is without merit.

The record establishes that Mr. Zhen was convicted of concealing and harboring illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(iii), and served a sentence of 233 days. Under 8 U.S.C. § 1101(a)(43)(N), his prior conviction clearly qualifies as an "aggravated felony." See 8 U.S.C. § 1101(a)(43)(N) (explaining that the term "aggravated felony" shall mean, inter alia, "an offense described in paragraph (1)(A) or (2) of section 1324(a) of this title (relating to alien smuggling)"). Further, because pursuant to § 1158(b)(2)(B)(i), aliens convicted of an aggravated felony "shall be considered to have been convicted of a particularly serious crime," Mr. Zhen is not entitled to asylum because asylum is simply not available to one "convicted by a final judgment of a particularly serious crime." 8 U.S.C. § 1158(b)(2)(A)(ii); see also Ilchuk v. Attorney General, 434 F.3d 618, 621 (3rd Cir. 2006). Accordingly, the BIA's conclusion on this score is correct.

## II.    Restriction on Removal

In order to obtain a restriction on his removal to China, Mr. Zhen must show that his "life or freedom would be threatened in [China] because of [his]

race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). Mr. Zhen can apply for and receive a restriction on his removal to China, provided he demonstrates a "clear probability" that his life or freedom would be threatened. See Wiransane, 366 F.3d at 894; see also 8 U.S.C. § 1231(b)(3)(A), (b)(3)(B). This standard for restriction on removal stands as "more demanding than the well-founded fear standard applicable to an asylum claim." Wiransane, 366 F.3d at 894 (internal citation and quotations omitted). As such, if Mr. Zhen fails to establish the objective component of a well-founded fear of persecution, he will *ipso facto* fail to establish an entitlement to restriction on removal. Batalova v. Ashcroft, 355 F.3d 1246, 1255 (10th Cir. 2004).

In this case, the BIA found that Mr. Zhen failed to meet his burden of demonstrating that it is more likely than not that he would be persecuted on account of his opposition to China's coercive population control measures and his foreign born children. The BIA had numerous reasons for its finding: (1) Mr. Zhen had not alleged any past persecution, (2) his wife and children could remain in the United States, (3) while the evidence might suggest sanctions and penalties due to the birth of United States citizen children, the evidence contained only a single incident of forced abortion that might support his fear of forced sterilization, and (4) in sum, he did not establish that it was more likely than not

that he would suffer any harm rising to the level of persecution. Admin. R. at 4-5. We agree.

We certainly understand and empathize with the pain and suffering that Mr. Zhen foresees in becoming separated from his wife and children upon removal. But Mr. Zhen's argument for restriction on removal has no merit, and substantial evidence supports the BIA's decision.

As an initial matter, Mr. Zhen does not contend here that he has suffered any past persecution. Second, because Ms. Dong has indicated that neither she (who has received asylum) nor her children (as United States citizens) would return to China if Mr. Zhen were to be deported, he is unable to argue now that they would be forced to return with him and suffer persecution. Id. at 397. Mr. Zhen has simply failed to present evidence that it is more likely than not that he will be sterilized or otherwise persecuted. Indeed, his argument centers on his contention that his wife and children will be removed as well, in which case either he or his wife will be subjected to forced sterilization.

But as noted above, the United States State Department profiles on Chinese asylum claims do not support Mr. Zhen's argument, see Aplee. Br. attach. A1-A13, A14-A20, A21-A32, and he has only pointed to one instance of state-mandated persecution for violating the one-child policy – a pregnant woman was forced to abort her child after being deported to and arriving in China. See

Admin. R. at 409-10. Indeed, Mr. Zhen's one expert himself admitted that "there are few published accounts on the handling of cases of Chinese nationals forcibly returned to China from abroad with unauthorized children." Id. Thus, despite our disdain for such practices, Mr. Zhen has failed to demonstrate a "clear probability" that his life or freedom would be threatened were he to be removed to China. See Wiransane, 366 F.3d at 894; see also 8 U.S.C. § 1231(b)(3)(A), (b)(3)(B).

III.    BIA Failed to Consider the Entirety of the Record

Lastly, Mr. Zhen argues that the BIA failed to consider the entirety of the record because it failed to "consider the affidavit of John Shields Aird, a nationally acknowledge [sic] expert on China's population control policy." Aplt. Br. at 20. The BIA did consider Mr. Aird's affidavit – indeed, it explicitly referred to it in its order. See Admin. R. at 6 (referring to exhibit seven of the administrative record, Mr. Aird's affidavit). Mr. Zhen's actual complaint is that the BIA did not find it persuasive. The BIA was not required to accept the conclusions contained therein.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge