**F I L E D**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

AHLAN AHLAN; SJULTJE
WAURAN,

       Petitioners,

v.

ALBERTO R. GONZALES, Attorney
General,

       Respondent.

No. 06-9512
(Nos. A95-254-295 & A95-254-296)
(Petition for Review)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

Ahlan Ahlan and his wife, Sjultje Wauran, seek review of a final order of

removal issued by an immigration judge (IJ) denying their requests for asylum,

restriction on removal, and relief under the United Nations Convention Against

Torture (CAT). Adopting but supplementing the IJ's decision, the Board of

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Immigration Appeals (BIA) affirmed. We have jurisdiction under 8 U.S.C. § 1252(a)(1) to review the decision denying restriction on removal and relief under the CAT, but lack jurisdiction to review the denial of asylum. As explained below, substantial evidence supports the BIA's decision, and we therefore deny the petition for review.

## I. Background

Petitioners are natives and citizens of Indonesia. Mr. Ahlan was raised Muslim, but converted to Christianity before marrying Ms. Wauran, who is Christian. On January 19, 2001, petitioners entered the United States on visitor's visas, but overstayed their visit. The Government subsequently commenced removal proceedings pursuant to 8 U.S.C. § 1227(a)(1)(B). At a hearing before the IJ, the couple conceded their removability, but requested asylum, restriction on removal, and relief under the CAT, claiming past persecution and fear of future persecution on account of Ms. Wauran's Chinese ethnicity and Mr. Ahlan's conversion to Christianity. The IJ denied the asylum application, finding that petitioners failed to show past persecution or a well-founded fear of persecution. The IJ also found petitioners' asylum application untimely. Regarding their requests for restriction on removal and relief under the CAT, the IJ reasoned that because petitioners failed to satisfy the lower standard of proof for asylum, they necessarily failed to satisfy the more stringent standards for restriction on

removal and relief under the CAT. The BIA adopted, supplemented, and affirmed the IJ's decision. The BIA agreed that petitioners failed to meet the burdens of proof on their claims of persecution and torture, as well as the IJ's finding that the asylum application was untimely. Petitioners now seek review.

## II. Discussion

We review the agency's legal determinations de novo, and its findings of fact under the substantial evidence standard. *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004); 8 U.S.C. § 1252(b)(4)(B) ("[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."). Factual findings must be "supported by reasonable, substantial, and probative evidence considering the record as a whole." *Elzour*, 378 F.3d at 1150. Although we review the BIA's decision as the final order of removal, here we may consult the IJ's more complete analysis because the BIA relied on the IJ's rationale to reach its decision. *See Uanreroro v. Gonzales*, 443 F.3d 1197, 1203-04 (10th Cir. 2006).

## A. Asylum

This court's jurisdiction to review determinations related to the timeliness of an asylum application is limited to constitutional claims and questions of law. *See* 8 U.S.C. § 1158(a)(3); *Diallo v. Gonzales*, 447 F.3d 1274, 1281 (10th Cir. 2006). Here, petitioners entered the United States in January 2001, but did not

file for asylum until 2003. The IJ found, and the BIA agreed, that petitioners' asylum application was untimely, without any extraordinary circumstances justifying their failure to file within the statutory period of one year. Therefore, because petitioners do not identify any constitutional claims or legal questions germane to the untimeliness of their asylum application, we lack jurisdiction to review the IJ's denial of asylum.

## B. Restriction on Removal and Relief under the Convention Against Torture

We are not, however, precluded from reviewing the IJ's denial of restriction on removal or relief under the CAT. *See Tsevegmid v. Ashcroft*, 336 F.3d 1231, 1235 (10th Cir. 2003) (explaining that 8 U.S.C. § 1158(a)(3) applies only to asylum requests and does not preclude review of other aspects of final orders of removal, such as restriction on removal, under 8 U.S.C. § 1252(a)). To obtain restriction on removal, an alien must show that his life or freedom would be threatened in the country of removal on account of his race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3)(A); *Tulengkey v. Gonzales*, 425 F.3d 1277, 1280 (10th Cir. 2005). An alien satisfies this burden by showing that he suffered past persecution on account of any of these five enumerated factors, 8 C.F.R. § 1208.16(b)(1), or by showing that it is "more likely than not" that he will suffer future persecution

-4-

if returned to the country of removal, *INS v. Stevic*, 467 U.S. 407, 429-30 (1984); 8 C.F.R. § 1208.16(b)(2).

Mr. Ahlan claims he and his wife suffered past persecution on account of her Chinese ethnicity and his conversion to Christianity. He argues the IJ failed to recognize that general ethnic and religious animosity towards Sino-Christians in Indonesia rises to the level of persecution. In particular, Mr. Ahlan describes an event in which his wife's clothing store was destroyed during riots in 1998, and suggests that substantial economic deprivation resulting from this event, coupled with the "general atmosphere of insecurity," amounted to persecution on "cumulative grounds." Pet'rs' Br. 13.

"Persecution is the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive and requires more than just restrictions or threats to life and liberty." *Chaib v. Ashcroft*, 397 F.3d 1273, 1277 (10th Cir. 2005) (quotation omitted). It is "an extreme concept that does not include every sort of treatment our society regards as offensive." *Korablina v. INS*, 158 F.3d 1038, 1044 (9th Cir. 1998) (quotation omitted). "Persecution may be found by cumulative, specific instances of violence and harassment," *id.*, but "generalized lawlessness and violence between diverse populations" is generally insufficient to satisfy the standard, *Singh v. INS*, 134 F.3d 962, 967 (9th Cir. 1998).

Here, petitioners have experienced no offensive treatment that rises to the level of persecution. The violence between Christians and Muslims in Indonesia was generalized and had little direct impact on petitioners such that it could be considered persecution. In this regard, the IJ acknowledged that riots had taken place in 1998, that businesses were burned down, and that women had been raped. But referring to a State Department report, the IJ also recognized that there had been a sharp drop in religious violence between Christians and Muslims, and that cooperation between the two groups had actually improved in certain areas of the country. Examining the effect of these conditions specifically upon petitioners, the IJ noted that petitioners had been dating since 1997, living together since 1998, and had been married since 2000, but were never specifically targeted on account of racial or religious animus. The IJ further noted that although the riots occurred in 1998, petitioners did not leave Indonesia until 2001. Given these findings and the substantial evidence supporting them, it seems apparent that the general atmosphere in Indonesia had little detrimental effect on petitioners.

The destruction of Ms. Wauran's shop does nothing to bolster petitioners' argument. The evidence proffered by petitioners concerning why Ms. Wauran's shop was burned down failed to establish that it was specifically targeted on account of her ethnicity or any other statutory basis of relief. Mr. Ahlan testified that the shop was destroyed only because it was among a group of Chinese-owned

buildings, and the IJ found that Ms. Wauran's birth certificate indicated she was Indonesian, not Chinese. Given this evidence, there is no indication that the destruction of Ms. Wauran's shop was anything but a general act of lawlessness and not an act of persecution. Nor was the burning of Ms. Wauran's shop tantamount to economic persecution. After the riots, a portion of the buildings in which Ms. Wauran's shop was situated was rebuilt, and her shop was reopened. Although petitioners were surely put at an economic disadvantage, there is simply no indication that this temporary shutdown caused petitioners to suffer severe economic persecution. *See Baka v. INS*, 963 F.2d 1376, 1379 (10th Cir. 1992) ("Potential job loss or generalized economic disadvantage . . . does not equal persecution."). Hence, substantial evidence supports the conclusion that petitioners were not the victims of past persecution.

Nevertheless, petitioners may still demonstrate entitlement to restriction on removal by showing "a clear probability of persecution in the country to which [they] would be returned." *Niang v. Gonzales*, 422 F.3d 1187, 1195 (10th Cir. 2005) (quotation omitted). In this case, petitioners contend they fear persecution on account of Mr. Ahlan's conversion to Christianity. Mr. Ahlan submitted evidence that among the Muslim faithful, conversion to Christianity is punishable by death. He testified that his entire family is Muslim and that his father said he

could not guarantee petitioners' safety if they returned to Indonesia – a statement Mr. Ahlan interprets as a threat.

"Threats alone generally do not constitute actual persecution; only rarely, when they are so immediate and menacing as to cause significant suffering or harm in themselves, do threats per se qualify as persecution." *Vatulev v. Ashcroft*, 354 F.3d 1207, 1210 (10th Cir. 2003). Here, Mr. Ahlan explained that his father did not expressly say he would kill him, but rather that he understood his statement, "I cannot guarantee your safety," to mean that he would. R. at 197. Evaluating this testimony, the IJ found it illogical that Mr. Ahlan would fear his family even though his parents knew since 1998 that he was living with a non-Muslim woman, and his father, sister, and brothers all knew he converted to Christianity in 2000. The IJ also found it illogical that throughout their relationship, petitioners purportedly feared Mr. Ahlan's family, but remained in Indonesia until 2001. Thus, the IJ concluded that Mr. Ahlan was not credible and did not have a well-founded fear of persecution. Based on the substantial evidence in the record, we agree that petitioners have failed to establish a clear probability of persecution if removed to Indonesia.

Still, petitioners claim to fear persecution from others as well, including neighbors and co-workers. Yet again, as the IJ recognized, petitioners had been living together since 1998, but had encountered no hostility from neighbors or

co-workers, even though they all knew Mr. Ahlan was living with a Christian woman. Indeed, regarding petitioners' general sense of fear from their neighbors, the IJ noted that Ms. Wauran has two children from a prior marriage who remain in Indonesia, are also Chinese Christians, but have been subject to no act of persecution. And concerning Mr. Ahlan's fear of his co-workers, the IJ found it unusual that Mr. Ahlan continued to work during his relationship with Ms. Wauran, left his job on good terms, and fully expects to receive a pension when he becomes eligible, but never experienced any hostility from his co-workers. Under these circumstances, the IJ found that petitioners failed to satisfy the standard for restriction on removal. Our review confirms that the IJ's decision is supported by substantial evidence in the record. Nothing suggests that petitioners face a clear probability of persecution upon return to Indonesia. It follows, then, that because petitioners have failed to satisfy the standard for restriction on removal, they are also not entitled to relief under the CAT. *See Sviridov. v. Ashcroft*, 358 F.3d 722, 729-30 (10th Cir. 2004).

## III. Conclusion

The petition for review is DENIED.

Entered for the Court

Stephen H. Anderson
Circuit Judge