**F I L E D**

**UNITED STATES COURT OF APPEALS**

**August 15, 2007**

**FOR THE TENTH CIRCUIT**

HERY KRIS SUBYANTORO,

Petitioner,

v.

ALBERTO R. GONZALES, United
States Attorney General,

Respondent.

No. 06-9590
(No. A96-360-129)
(Petition for Review)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Judge, **MURPHY** and **HOLMES**, Circuit Judges.

Petitioner Hery Kris Subyantoro, a native and citizen of Indonesia, entered

the United States on April 27, 2000, and then failed to leave upon expiration of

his visa. In removal proceedings he conceded removability but sought asylum

under 8 U.S.C. § 1158, restriction on removal under 8 U.S.C. § 1231(b)(3), and

relief under Article III of the United Nations Convention Against Torture (CAT),

---

[*]      After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

*see* Pub. L. No. 105-277, § 2242, 112 Stat. 2681, 2681-822 to 823.[1]

Mr. Subyantoro claimed that he had been persecuted in Indonesia because he was a Christian of Chinese descent and that the persecution would continue if he were returned to that country.

An immigration judge (IJ) denied Mr. Subyantoro's requests for relief. The IJ denied asylum on the ground that Mr. Subyantoro's application was untimely. As to restriction on removal and relief under the CAT, the IJ found not credible Mr. Subyantoro's claim of Chinese ethnicity and claim that his father had been severely beaten by Muslim neighbors. The IJ found that because Mr. Subyantoro was not "a credible witness in a material part of his claim" he was "in general, not a credible witness with reference to the claims that he place[d] before the Court." Admin. R. at 8. The IJ proceeded to deny restriction on removal, holding that Mr. Subyantoro had not "provided any credible evidence to indicate that it [was] more likely than not that he would be persecuted upon return to Indonesia."

---

[1]      Restriction on removal was referred to as "withholding of removal" before amendments to the [Immigration and Nationality Act] made by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009. Although both parties and the IJ refer to withholding of removal, for the sake of accuracy, and because this claim was filed after IIRIRA's effective date, we will use the term "restriction on removal" throughout this opinion.

*Wiransane v. Ashcroft*, 366 F.3d 889, 892 n.1 (10th Cir. 2004).

*Id*. at 11. The IJ denied relief under CAT for the same reasons. The Board of Immigration Appeals (BIA) subsequently adopted and affirmed the IJ's decision.

On appeal, Mr. Subyantoro argues that the BIA erred in adopting the IJ's finding that his testimony was not credible and in affirming the IJ's denial of restriction on removal.[2] Because the IJ presented specific and cogent reason's for the adverse credibility finding and because the denial of restriction on removal was supported by substantial evidence, we exercise our jurisdiction under 8 U.S.C. § 1252(b) and deny Mr. Subyantoro's petition for review.

I.

The BIA's decision was in a brief order issued by a single member of the Board. *See* 8 C.F.R. § 1003.1(e)(5). We therefore review the BIA's decision as the final order of removal but "may consult the IJ's opinion to the extent that the BIA relied upon or incorporated it." *Sarr v. Gonzales*, 474 F.3d 783, 790 (10th Cir. 2007).

> When reviewing BIA decisions, an appellate court must look to the record for 'substantial evidence' supporting the agency's decision[.] Our duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole. Agency findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary. We do not weigh the evidence or evaluate the witnesses' credibility.

---

[2] Although Mr. Subyantoro's arguments regarding past and future persecution would also have obvious application to a discussion of asylum, he does not argue that the IJ and BIA erred in determining that his application for asylum was untimely.

*Id*. at 788-89 (citations, internal quotation marks, and alterations omitted).

## II.

Mr. Subyantoro's first claim is that the IJ erred in finding that his testimony was not credible.[3] "Credibility determinations are factual findings subject to the substantial evidence test. Because an alien's testimony alone may support an application for withholding of removal or asylum, the IJ must give specific, cogent reasons for disbelieving it." *Sarr*, 474 F.3d at 789 (citations and internal quotation marks omitted). Although "[a]n IJ's finding that an applicant's testimony is implausible may not be based upon speculation, conjecture, or unsupported personal opinion," *Elzour v. Ashcroft*, 378 F.3d 1143, 1153 (10th Cir. 2004), an adverse credibility determination "may appropriately be based upon such factors as inconsistencies in the witness' testimony, lack of sufficient detail, or implausibility," *id*. at 1152. "Finally, our review is confined to the reasoning given by the IJ, and we will not independently search the record for alternative bases to affirm." *Id*. at 1150.

Here, the IJ gave "specific, cogent reasons" for finding that Mr. Subyantoro was not a credible witness. He found that Mr. Subyantoro's testimonial claims

---

[3]    The REAL ID Act of 2005 includes a new provision relating to agency credibility determinations in the restriction on removal context, now codified at § 1231(b)(3)(C). *See* Pub. L. No. 109-13, div. B, § 101(c), 119 Stat. 231, 303-04. This provision does not apply to Mr. Subyantoro's case in that he applied for restriction of removal prior to May 11, 2005, the effective date of the act. *See* Pub. L. No. 109-13, div. B, § 101(h)(2), 119 Stat. 231, 305. Our decision would be the same, however, with or without application of the new provision.

that (1) he was part Chinese and had suffered persecution on that ground, and (2) his father had been beaten so badly by Muslim neighbors that he was bedridden for three months, were clearly inconsistent with his application and personal statement which made neither claim. Our review of the record confirms these serious inconsistencies. We cannot therefore hold that "any reasonable adjudicator would be compelled to conclude" that Mr. Subyantoro's testimony was credible, *see Sarr*, 474 F.3d at 788-89, we affirm the BIA's decision adopting the IJ's determination on this point.

III.

We now turn to Mr. Subyantoro's claim that the IJ erred in denying restriction on removal.

> To qualify for restriction on removal, an alien must demonstrate that his "life or freedom would be threatened in [the proposed country of removal] because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *see also* 8 C.F.R. § 1208.16(b).

*Id*. at 788. "The restriction statute is satisfied by a showing that it is more likely than not that the alien would be subject to persecution on one of the specified grounds upon returning to [his] country of origin." *Tulengkey v. Gonzales*, 425 F.3d 1277, 1280 (10th Cir. 2005) (internal quotation marks omitted). Under 8 C.F.R. § 208.16(b)(1)(i), "[i]f the applicant is determined to have suffered past persecution in the proposed country of removal on account of . . . religion, . . . it shall be presumed that the applicant's life or freedom would be threatened in the

future in the country of removal on the basis of the original claim." Further, under 8 C.F.R. § 208.16(b)(2):

> In evaluating whether it is more likely than not that the applicant's life or freedom would be threatened in a particular country on account of race, religion, nationality, membership in a particular social group, or political opinion, the asylum officer or immigration judge shall not require the applicant to provide evidence that he or she would be singled out individually for such persecution if:
>
> (i) The applicant establishes that in that country there is a pattern or practice of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion; and
>
> (ii) The applicant establishes his or her own inclusion in and identification with such group of persons such that it is more likely than not that his or her life or freedom would be threatened upon return to that country.

Mr. Subyantoro claims that he adequately proved that he had suffered past persecution because of his Christian beliefs. In the alternative, he argues that even if he had not been persecuted in the past, he proved that it was more likely than not that he would be persecuted if returned to Indonesia because there is a pattern or practice in that country of persecuting Christians.

A. Past Persecution.

We cannot hold that "any reasonable adjudicator would be compelled to conclude" that Mr. Subyantoro had suffered past persecution. *Sarr*, 474 F.3d at 788-89. Even if the IJ's non-credibility determination was directly only to

Mr. Subyantoro's testimony regarding the beating of his father and his Chinese ethnicity, the IJ's decision would still be supported by substantial evidence.[4]

Mr. Subyantoro testified that he had been harassed and threatened practically all his life by Muslim neighbors, that the harassment was the reason that his family had moved so many times, and that his family left Bekasi because members of an unnamed Muslim extremist group constantly watched his house and eventually sent his family a letter threatening their lives unless they left. But "[p]ersecution is the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive and requires more than just restrictions or threats to life and liberty." *Chaib v. Ashcroft*, 397 F.3d 1273, 1277 (10th Cir. 2005) (internal quotation marks omitted). Although persecution can come from the government or from a non-government group "which the government is unwilling or unable to control," *Vatulev v. Ashcroft*, 354 F.3d 1207, 1209 (10th Cir. 2003) (internal quotation marks omitted), "[m]ere generalized lawlessness and violence between diverse populations, of the sort which abounds in numerous countries . . . generally is not sufficient to permit the Attorney General to grant asylum." *Singh v. INS*, 134 F.3d 962, 967 (9th Cir. 1998).

---

[4] The IJ held that Mr. Subyantoro was "*in general*, not a credible witness with reference to the claims that he place[d] before Court." Admin. R. at 8 (emphasis added).

Being the subject of daily "animosity and unfriendly looks" from Muslim neighbors, Admin. R. at 162; having dead animals thrown into his yard by unknown persons; and even receiving an anonymous death threat, although clearly disturbing, does not rise to the level of persecution. Especially when considered in conjunction with the information in the State Department reports in the record showing that the Indonesian government generally respected its citizens' constitutional right to freedom of religion and, as specifically noted by the IJ, that "in most parts of Indonesia, people generally are able to worship as they wish with no interference from the state or their neighbors of other faiths." *Id*. at 10. Consequently, we hold that the IJ's factual determination that Mr. Subyantoro had not suffered past persecution is supported by substantial evidence.

B. Future Persecution.

Mr. Subyantoro also claims that the IJ erred in determining that there was not a pattern or practice in Indonesia of persecuting Christians. We have explained that a pattern or practice of persecution entails "something on the order of organized or systematic or pervasive persecution." *Woldemeskel v. INS*, 257 F.3d 1185, 1191 (10th Cir. 2001) (internal quotation marks omitted). As noted above, the State Department reports show that "in most parts of Indonesia, people generally are able to worship as they wish with no interference from the state or their neighbors of other faiths." Admin. R. at 10. Although, as argued by Petitioner, the reports also show that instances of Muslim violence toward

Christians clearly occur, and that "security forces occasionally tolerated discrimination against and abuse of religious groups by private actors, and the Government at times failed to punish perpetrators," the reports indicated that violence against Christians is not the government's policy and that there is no organized, systematic, or pervasive persecution of Christians in Indonesia. Consequently, we cannot say that "any reasonable adjudicator would be compelled to conclude" that it was more likely than not that Mr. Subyantoro's life or freedom would be threatened because of his religion if he were returned to Indonesia. *See Sarr*, 474 F.3d at 788-89.

IV.

Mr. Subyantoro's petition for review is DENIED.

Entered for the Court

Deanell Reece Tacha
Chief Circuit Judge

-9-