FILED
United States Court of Appeals
Tenth Circuit

September 26, 2007

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MARLIANI SITORUS,

Petitioner,

v.

PETER D. KEISLER, Acting
Attorney General,[*]

Respondent.

No. 07-9500
(No. A96-095-870)
(Petition for Review)

---

**ORDER AND JUDGMENT[**]**

---

Before **HARTZ**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**TYMKOVICH**, Circuit Judge.

---

Marliani Sitorus petitions for review of a decision by an immigration judge

("IJ"), affirmed by the Board of Immigration Appeals ("BIA"), denying her

---

[*]    On September 17, 2007, Peter D. Keisler became the Acting Attorney
General.  In accordance with Rule 43(c)(2) of the Federal Rules of Appellate
Procedure, Mr. Keisler is substituted for Alberto R. Gonzales as the appellee in
this action.

[**]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel.  It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

applications for asylum and restriction on removal under the Immigration and Nationality Act ("INA") and the United Nations Convention Against Torture ("CAT"). An Indonesian citizen and national, Ms. Sitorus claims that if she is forced to return to her home country, she will be persecuted because of her Christian faith. The IJ denied her application for asylum as untimely and denied all requested relief because she failed to establish eligibility. Exercising jurisdiction under 8 U.S.C. § 1252, we deny the petition.

## I. BACKGROUND

Ms. Sitorus first came to the United States in 1993 at the age of 16, when she and her mother traveled to Tucson, Arizona, to join her father, who was studying at the University of Arizona. In 1995 she graduated from high school in Tucson and returned to Indonesia briefly to obtain a student visa so that she could continue her studies in the United States. Upon her return to Tucson, she attended college, eventually earning a bachelor's degree in music from the University of Arizona. Her parents returned to Indonesia in 1996.[1]

Ms. Sitorus claims that in Indonesia she faces harassment, abuse, extortion, rape, and even death at the hands of Muslim extremists. Because all Indonesians are required to carry identification cards bearing their religious faith, she would not be able to conceal the fact that she is a practicing Christian. And she claims

---

[1] Ms. Sitorus's parents have since come back to the United States and filed their own applications for asylum, which were apparently still pending at the time of her hearing.

that the Indonesian government, which itself is comprised overwhelmingly of Muslims, cannot or will not protect the nation's Christian minority. Ms. Sitorus concedes that she herself has never been a target of religious violence. But based on the experiences of her parents and friends, she fears that she will be targeted if she is forced to return to Indonesia. She also testified that even though she was spared physical harm when in Indonesia, she was subjected to harassment and discrimination because of her Christianity. Her elementary school years, most of which were spent at public schools, were marred by discrimination and ill-treatment on account of her faith. And throughout her schooling she and other Christians were "treated like second-class citizens" by predominantly Muslim teachers and classmates. Admin. R. at 1220. Although her teachers knew that she was being harassed and abused, they did nothing to stop it because they too were Muslim. She was forced to attend Muslim religion classes and repeatedly subjected to anti-Christian sermons and attempts to convert her to Islam. This type of abuse continued until she left Indonesia for the United States.

In December 1997 Ms. Sitorus returned to Indonesia to visit her parents. She said that she had "never been so scared in Indonesia." *Id.* at 1221. The streets of Jakarta, where her parents lived, were full of demonstrators, making it unsafe to travel, and the Muslims in her neighborhood prevented her church from holding Christmas services. She claims that it was so dangerous for Christians to be out and about that her parents kept her inside. She "felt trapped with no

freedoms and no ability to practice [her] chosen faith and [she] was offended that [she] could not do anything to protect [herself] or [her] religion." *Id.* She said that since she "returned to the United States in January of 1998, [she has] not dared to leave." *Id.* When her student visa expired, her employer filed an H-1B application on her behalf seeking to change her immigration status from student to specialty occupation worker, but that request was denied in January 2002. On September 30, 2002, Ms. Sitorus filed her application for asylum and restriction on removal.

At a hearing on July 28, 2005, the IJ denied Ms. Sitorus's application. First, he found that she had failed to file for asylum within one year of her arrival in the United States, as required by 8 U.S.C. § 1158(a)(2)(B), and that no extraordinary or exceptional circumstances justified her late filing. Second, he found that she had "failed to show past persecution or a well-founded fear of persecution within the meaning of the Immigration and Nationality Act." *Id.* at 57. With respect to this latter finding, the IJ explained that although he believed Ms. Sitorus's testimony, there simply was not enough evidence to support a finding that more likely than not she would be persecuted on account of her faith if she returned to Indonesia. The IJ took note of the evidence that Ms. Sitorus submitted concerning the interreligious violence that has plagued Indonesia since 1998, but found it insufficient to demonstrate that she would be singled out for persecution. He also said that she could avoid religious persecution by resettling

-4-

in an area of Indonesia that is predominantly Christian and that there was no evidence that she could not relocate to such an area. In addition, the IJ expressed doubt because of Ms. Sitorus's return trips to Indonesia, suggesting that a person truly in fear for her life would not have returned to the country of persecution:

> It doesn't make any sense at all to this Court that anybody would be in her situation, where they could persecute her, they could kill her, they could rape her, or whatever they do, then she goes back on vacation on two occasions. That doesn't sound logical to this court.

*Id.* at 59. The IJ further concluded that given Ms. Sitorus's failure to demonstrate eligibility for asylum, she necessarily failed to satisfy the more stringent standard applicable to a request for restriction on removal. He also denied relief under the CAT.

On December 14, 2006, the BIA issued a brief order affirming and adopting the IJ's decision and dismissing the appeal. It concurred in the IJ's finding that Ms. Sitorus's asylum application was untimely and also that she "failed to show changed conditions under 8 C.F.R. § 1208.4(a)(4) or extraordinary circumstances under 8 C.F.R. § 1208.4(a)(5)." *Id.* at 3. The BIA also agreed with the IJ that Ms. Sitorus's failure to show past persecution or a clear probability of persecution was fatal to her request for restriction on removal. And it concurred in the IJ's denial of relief under the CAT.

## II.    DISCUSSION

The BIA issued its decision by a brief order signed by a single board member.  *See* 8 C.F.R. § 1003.1(e)(5).  We therefore review the BIA's decision as the final order of removal but "may consult the IJ's opinion to the extent that the BIA relied upon or incorporated it."  *Sarr v. Gonzales*, 474 F.3d 783, 790 (10th Cir. 2007).  "Our duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole.  Agency findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary."  *Id.* at 788–89 (brackets, citation, and internal quotation marks omitted).  We review the agency's legal conclusions de novo.  *See Tulengkey v. Gonzales*, 425 F.3d 1277, 1280 (10th Cir. 2005).

### A.    Asylum

Ms. Sitorus's asylum application was denied because she failed to file it within one year of her January 1998 arrival in the United States.  In this court she does not challenge that determination, so we must deny her petition insofar as she seeks review of the denial of asylum.

### B.    Restriction on Removal

Restriction on removal, previously called withholding of removal, *see Wiransane v. Ashcroft*, 366 F.3d 889, 892 n.1 (10th Cir. 2004), prohibits the removal of "an alien to a country if the Attorney General decides that the alien's

-6-

life or freedom would be threatened in that country because of the alien's . . . religion." 8 U.S.C. § 1231(b)(3)(A). "In order to demonstrate eligibility for [restriction on removal], the applicant must establish a clear probability of persecution through presentation of evidence establishing that it is more likely than not that the applicant would be subject to persecution." *Woldemeskel v. INS*, 257 F.3d 1185, 1193 (10th Cir. 2001) (brackets and internal quotation marks omitted). Restriction on removal is not available to an applicant who has made no showing of past persecution if the IJ "finds that the applicant could avoid . . . future [persecution] . . . by relocating to another part of the proposed country of removal and, under all the circumstances, it would be reasonable to expect the applicant to do so." 8 C.F.R. § 1208.16(b)(2); *see id.* § 1208.16(b)(3)(i) (applicant bears burden of persuasion).

Although Ms. Sitorus was harassed in elementary school by her Muslim classmates and teachers, nothing that happened to her rises to the level of persecution. *See Tulengkey*, 425 F.3d at 1280–81. As for her claim based on a fear of future persecution at the hands of Muslim extremists, we need address only one ground upon which this claim was rejected—the availability of relocation within Indonesia.

The IJ found that there are some areas of Indonesia that are predominantly Christian and that Ms. Sitorus therefore does not face a threat of persecution countrywide. He further concluded, based on the record, that there was nothing to

prevent Ms. Sitorus from relocating to a predominantly Christian area. Our own review of the record does not compel us to conclude otherwise. Indeed, State Department reports submitted by Ms. Sitorus indicate that Muslims are a distinct minority in "Papua, Bali, East Nusa Tenggara, and parts of North Sumatra and North Sulawesi." Admin. R. at 1104; *see id.* at 1088. If Ms. Sitorus has reasons why she cannot relocate to any of these areas, she failed to present them. Nor does her brief on appeal raise any specific challenge to the IJ's relocation finding. Instead, she asserts only generally, without any reference to the relocation finding, "that Christians are discriminated against as a class throughout the entire country of Indonesia, where they represent a minority intermittently and discriminately throughout its past and present history." Pet'r Br. at 21. This is insufficient to convince us to overturn the IJ's relocation finding. *See Tulengkey*, 425 F.3d at 1282 (upholding denial of restriction on removal when "the IJ found relocation to be possible and petitioners point[ed] to no evidence that relocation would be unreasonable"). Under these circumstances Ms. Sitorus's "claim of a well-founded fear of future persecution necessarily fails." *Id.*

### C. Relief under the CAT

Although Ms. Sitorus's brief in this court mentions the CAT in a heading in the table of contents, no heading in the brief itself mentions the CAT, and we find no argument in the brief that she has been tortured, faces torture, or is otherwise

entitled to relief under the CAT.  We therefore need not address the BIA's ruling on her CAT claims.

## III.    CONCLUSION

We deny the petition for review.

Entered for the Court

Harris L Hartz
Circuit Judge