PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

IVONNE TELMA TULENGKEY;
REYNALDO SITUMORANG,

  Petitioners,

  v.

ALBERTO R. GONZALES, Attorney
General, *

  Respondent.

No. 04-9562

---

**PETITION FOR REVIEW   FROM THE BOARD OF
IMMIGRATION APPEALS
(No. A95-542-773/774)**

---

Submitted on the briefs:

Haroen Calehr, Calehr & Associates, Houston, Texas, for Petitioner.

Allen W. Hausman, Senior Litigation Counsel, and Blair T. O'Connor, Senior
Litigation Counsel, United States Department of Justice, Civil Division, Office of
Immigration Litigation, Washington, D.C., for Respondent.

---

*      On February 4, 2005, Alberto R. Gonzales became the United States
Attorney General.  In accordance with Rule 43(c)(2) of the Federal Rules of
Appellate Procedure, Mr. Gonzales is substituted for John Ashcroft as the
Respondent in this action.

Before **EBEL, HARTZ** , and **McCONNELL** , Circuit Judges.

---

**HARTZ** , Circuit Judge.

---

Petitioners Ivonne Tulengkey and Reynaldo Situmorang are natives and citizens of Indonesia. They challenge the Board of Immigration Appeals' (BIA's) decision summarily affirming an Immigration Judge's (IJ's) denial of asylum and restriction on removal. Petitioners argue that the IJ erred in finding that Ms. Tulengkey had not suffered past persecution and lacked a well-founded fear of future persecution. We have jurisdiction under 8 U.S.C. § 1252(a), and we deny the petition for review. [**]

## I. BACKGROUND

Ms. Tulengkey was admitted to the United States on May 2, 2001, on a nonimmigrant tourist visa with authorization to remain for six months. She overstayed her visa and married Mr. Situmorang, who had arrived in this country 11 months earlier and had also overstayed his visa.

---

[**] After examining the briefs and administrative record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

On June 5, 2002, Ms. Tulengkey appeared before an asylum officer and submitted an application for asylum and restriction on removal, [1] including Mr. Situmorang in the application. [2] On the application form Ms. Tulengkey indicated that she and Mr. Situmorang are Christians of Chinese descent. According to Ms. Tulengkey, these two characteristics place her and Mr. Situmorang at risk of serious bodily injury and death at the hands of Muslim Indonesians. Ms. Tulengkey mentioned the bombings of Christian churches, the presence of the "Bin Laden group," A.R. 983 (internal quotation marks omitted), and the Indonesian government's failure to curb Islamic extremism. Ms. Tulengkey also related incidents in which she and her family had experienced religious and ethnic animosity.

On June 20, 2002, Ms. Tulengkey and Mr. Situmorang were ordered to appear before an IJ and show why they should not be removed from the United

---

[1] Ms. Tulengkey also checked a box on the application indicating that she sought asylum and restriction on removal under the Convention Against Torture (CAT). Although the IJ did not address the CAT, Ms. Tulengkey raised no CAT issues before the BIA and does not appear to be raising any CAT issues in the petition to this court. *See Rivera-Zurita v. INS*, 946 F.2d 118, 120 n.2 (10th Cir. 1991) ("Judicial review does not extend to points the alien could have made before the Board but did not."); *Krastev v. INS*, 292 F.3d 1268, 1280 (10th Cir. 2002) ("Issues not raised on appeal are deemed to be waived.").

[2] Although Mr. Situmorang did not apply for asylum or restriction on removal, he is a derivative beneficiary of Ms. Tulengkey's application, 8 U.S.C. § 1158(b)(3); 8 C.F.R. § 208.3(a).

States.  Appearing pro se, they offered numerous news reports and government documents regarding ethnic and religious turmoil in Indonesia.

In an oral decision the IJ denied Ms. Tulengkey's application and ordered her and Mr. Situmorang removed to Indonesia.  The IJ found that Ms. Tulengkey had not been persecuted in the past, although she had been subjected to random violence "that everyone in Indonesia must live with." A.R. 77.  As for Ms. Tulengkey's fear of future persecution, the IJ found that (1) her fear was of random violence from people who had not been shown to be beyond the government's willingness or ability to control; (2) there are areas of Indonesia that are predominantly Christian, implying that she could relocate to one of those areas; and (3) "the vast majority of Christians and Chinese in [Indonesia] go about their business without interference, although they have a fear of harm or a fear of terrorism from Muslims," A.R. 77.  Ms. Tulengkey retained counsel and appealed to the BIA, which affirmed without opinion. [3]  Ms. Tulengkey then petitioned this court for review.

## II. DISCUSSION

By affirming the IJ's decision without opinion, the BIA made the IJ's decision the final agency determination for purposes of appellate review.

---

[3]     To the extent petitioners are challenging the BIA's summary disposition of their appeal, their challenge lacks merit.  *See Ustyan v. Ashcroft*, 367 F.3d 1215, 1218 (10th Cir. 2004).

-4-

*Sviridov v. Ashcroft*, 358 F.3d 722, 727 (10th Cir. 2004). This court reviews the IJ's factual findings for substantial evidence, *Estrada-Escobar v. Ashcroft*, 376 F.3d 1042, 1046 (10th Cir. 2004), meaning that they "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B). The IJ's legal conclusions are reviewed de novo. *Hadjimehdigholi v. INS,* 49 F.3d 642, 647 (10th Cir. 1995).

To be eligible for asylum, an alien must show that she has suffered past persecution [4] or has "a well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *see also* 8 C.F.R. § 208.13(a). To obtain restriction on removal, the alien must demonstrate that her "life or freedom would be threatened in [the proposed country of removal] because of [her] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *see also* 8 C.F.R. § 1208.16(b). The restriction statute is satisfied by a showing that "it is more likely than not that the alien would be subject to persecution on one of the specified grounds" upon returning to her country of origin. *INS v. Stevic*, 467 U.S. 407, 429-30 (1984).

---

[4]    Past persecution may give rise to either (1) a presumption that the applicant has a well-founded fear of future persecution or (2) humanitarian asylum if the applicant demonstrates that the persecution was so severe that it provides "compelling reasons for being unwilling or unable to return." 8 C.F.R. § 208.13(b)(1).

## A. Past Persecution

Petitioners contend that "they suffered persecution where, in conjunction with the political [and] social turmoil in their country, they received many threats against their life." Petitioners' Br. at 12. But they fail to support this contention with a record cite, *see* Fed. R. App. P. 28(a)(9)(A), and their petition for judicial review mentions only two incidents. First, one day in 1990 when Ms. Tulengkey was walking home from junior high school, she was robbed and fondled by two boys who screamed "Chinese, Chinese, Chinese." A.R. 96. During the struggle with one of the assailants, Ms. Tulengkey "moved and . . . caught his ring," which "hurt [her] head." A.R. 96, 113. Second, in 1998 when Ms. Tulengkey was at a wedding, about 50 Muslims armed with sticks and knives arrived and "took all the food" and "hit people who tried to stop them," yelling that "there were a lot of hungry people out there," A.R. 989, and that the wedding guests were "eat[ing] like some royalty," A.R. 100.

"Persecution is the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive, and requires more than just restrictions or threats to life and liberty." *Chaib v. Ashcroft*, 397 F.3d 1273, 1277 (10th Cir. 2005) (internal quotation marks omitted). *Compare Lie v. Ashcroft*, 396 F.3d 530, 536 (3d Cir. 2005) ("[T]wo isolated criminal acts, perpetrated by unknown assailants, which resulted only in the theft of some

-6-

personal property and a minor injury, is not sufficiently severe to be considered persecution."), *Eduard v. Ashcroft*, 379 F.3d 182, 188 (5th Cir. 2004) ("denigration, harassment, and threats" did not constitute persecution; nor did "morally reprehensible" discrimination) (internal quotation marks omitted), *and Kapcia v. INS*, 944 F.2d 702, 704-05, 708 (10th Cir. 1991) (past persecution had not been demonstrated by an asylum applicant who had twice been detained for two-day periods during which he was beaten and interrogated, whose parents' home had been searched, whose work locker had been repeatedly broken into, and who had been assigned poor work tasks, denied bonuses, and conscripted into the army, where he was constantly harassed), *with Nazaraghaie v. INS*, 102 F.3d 460, 463-64 (10th Cir. 1996) (suggesting that asylum applicant's severe beating and 10-month imprisonment on account of his political opinion constituted persecution).

We cannot conclude that every reasonable fact-finder would be compelled to find persecution based on Ms. Tulengkey's robbery, during which she was fondled and suffered an unspecified minor head injury, and her witnessing a Muslim mob eight years later steal food and rough up guests at a relative's wedding. Accordingly, the IJ did not err in finding no past persecution.

## B. Fear of Future Persecution

Even without past persecution, Ms. Tulengkey could still qualify for asylum by establishing a "well-founded fear of future persecution," 8 C.F.R. § 1208.13(b). Such a fear must be both subjectively genuine and objectively reasonable. *Wiransane v. Ashcroft*, 366 F.3d 889, 893 (10th Cir. 2004). An asylum applicant has an objectively well-founded fear of persecution if (1) she may be singled out for persecution upon returning to her country of origin, or (2) "there is a pattern or practice in [that] country . . . of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion," and the applicant belongs to and identifies with that group, 8 C.F.R. § 208.13(b)(2)(iii); *see also Wiransane*, 366 F.3d at 893; *Woldemeskel v. INS*, 257 F.3d 1185, 1190 (10th Cir. 2001).

An asylum applicant, however, "does not have a well-founded fear of persecution if the applicant could avoid persecution by relocating to another part of the applicant's country of nationality . . . [and] if under all the circumstances it would be reasonable to expect the applicant to do so." 8 C.F.R. § 208.13(b)(2)(ii). Where, as here, the asylum applicant has not shown past persecution and the alleged future persecution is not by a government or a

-8-

government-sponsored group, the asylum applicant bears the burden of establishing that relocation would be unreasonable. *Id.* § 208.13(b)(3)(i).

Ms. Tulengkey claims a fear of future persecution based on her Chinese ethnicity and Christian religion. [5] The IJ rejected this claim on several grounds. We need address only the relocation issue. The IJ found that there were a few large cities and districts where the population is mostly Christian, and that relocation was possible. Ms. Tulengkey urges this court to follow *Eduard v. Ashcroft*, 379 F.3d 182 (5th Cir. 2004), which involved the asylum claims of two Christian Indonesians, one of whom was ethnically Chinese and the other perceived as Chinese. *Eduard* held that the IJ, after crediting evidence that relocation could be a hardship, had applied the wrong burden of persuasion when it ultimately found that the petitioners could relocate "if necessary." *Id.* at 194 (internal quotation marks omitted). Regardless of the merits of *Eduard*, it is readily distinguishable. Here, the IJ found relocation to be possible and petitioners point to no evidence that relocation would be unreasonable. Nor do

---

[5]   Ms. Tulengkey also argues that she is subject to persecution because of her membership in a "particular social group," Petitioners' Br. at 23, which the IJ found to be "Chinese ancestry," A.R. 73. For purposes of our discussion, we need not determine whether the fact that petitioners are one-quarter Chinese places them in a protected social group, *see Niang v. Gonzales*, No. 04-9547, 422 F.3d 1187, ___, 2005 WL 2160140, at *8-9 (10th Cir. Sept. 8, 2005) (defining "membership in a particular social group"), because Ms. Tulengkey offers no cogent distinction between persecution based on her Chinese ancestry and persecution based on her Chinese ethnicity.

they otherwise challenge the IJ's relocation findings. Thus, their claim of a well-founded fear of future persecution necessarily fails.

## III. Conclusion

Because petitioners have demonstrated no reversible error in the IJ's past-persecution and fear-of-future-persecution findings and conclusions, [6] we deny the petition for judicial review.

---

[6]    As petitioners have failed to establish that Ms. Tulengkey is eligible for asylum, it follows that they are unable to meet the more demanding evidentiary burden required for restriction on removal. *See Elzour*, 378 F.3d at 1149.