**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 1, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

D JONNI,

        Petitioner,

v.

PETER D. KEISLER,[*]
Acting Attorney General,

        Respondent.

No. 07-9512
(No. A97-195-430)
(Petition for Review)

---

**ORDER AND JUDGMENT**[**]

---

Before **TYMKOVICH**, **BALDOCK**, and **EBEL**, Circuit Judges.

---

        Petitioner D Jonni seeks review of a final order of removal in which the

Bureau of Immigration Appeals (BIA) affirmed an Immigration Judge's (IJ)

---

[*]      Pursuant to Fed. R. App. P. 43(c)(2), Peter D. Keisler is substituted for Alberto R. Gonzales as respondent in this appeal.

[**]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

denial of his applications for asylum, restriction on removal,[1] and relief under the Convention Against Torture (CAT). We dismiss in part and deny in part Mr. Jonni's petition for review.

## I. Background

Mr. Jonni is a citizen of Indonesia, where he was born in 1976. He was admitted to the United States on a non-immigrant visa on April 15, 2000. He remained here beyond the six-month period authorized by his visa. In April 2003 he filed applications for asylum, restriction on removal, and relief under CAT. He claimed past persecution and a well-founded fear of future persecution in Indonesia, based upon his Chinese ethnicity and his Christian religion. The Department of Homeland Security (DHS) initiated removal proceedings against Mr. Jonni in July 2003 and he conceded removability.

### A. Mr. Jonni's Applications for Relief

On his application form, Mr. Jonni stated that he fears native Indonesians and Muslims because he is both Chinese and Christian. He referred generally to persecution of Christians, hundreds of church burnings, Muslim/Christian

---

[1] The IJ and the government use the term "witholding of removal." "[A]mendments to the Immigration & Naturalization Act made by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) changed the terminology to 'restriction on removal.' *See* 8 U.S.C. § 1231(b)(3)[.] Since this case arose after the effective date of the IIRIRA, we refer to this provision as 'restriction on removal.'" *Sidabutar v. Gonzales*, No. 06-9576, __ F.3d __, 2007 WL 2743672, at *1 n.1 (10th Cir. Sept. 21, 2007) (citation omitted).

violence in particular parts of the country, the imposition of Muslim religious laws in some areas, Muslims' intolerance of other religions, especially Christianity, and recent riots in favor of the Iraqi regime. He said he believed that the Indonesian government would not protect him from the majority-Muslim population. He also stated that he had been beaten, and had glass and stones thrown at him, because he looks Chinese. He said that his father was killed by native Indonesians, who hate Chinese people, after his father refused their blackmail demands to pay them or move away. He described how his family found his father's body inside the store that he owned. On his application form, Mr. Jonni indicated that his mother and sister still lived in Indonesia. He stated that no one in his immediate family had been arrested anywhere outside of the United States, and he denied that he, his parents, or his siblings had applied for asylum in the United States or sought lawful status in any other country.

### B. Mr. Jonni's Testimony

At a hearing before an IJ on August 2, 2005, Mr. Jonni testified that he spent his early years in Parsuruan, where he attended a Catholic school. He described being harassed because he is Chinese. He spoke of having no one to play with, being spit upon, and having stones thrown at him. Mr. Jonni claimed that, when he was about eight or nine years old, the police unjustly arrested and beat his father, accusing him of doing something bad and being an illegal alien.

He acknowledged later in his testimony that he failed to mention his father's arrest in his asylum application.

At some point he went to live in Malang, which is about an hour and a half from Parsuruan. He joined his brother and sister, who had previously moved to Malang, and they lived with extended family members. His parents remained in Parsuruan, where his father operated a store, but his mother visited the children in Malang on the weekends. He again attended a Catholic school. In contrast to his description of his life in Parsuruan, he did not testify that he was subjected to similar harassment in Malang because he is Chinese.

He testified further that native Indonesian Muslims were jealous of the prosperity of his father's store in Parsuruan. He said that his parents received threatening letters saying things like, "[Y]ou're Chinese, you're not suppose[d] to be here." Admin. R. at 95. He testified that in 1991 he returned with his mother to Parsuruan after one of her visits to Malang. They found the store closed, with no sign of his father. After making some inquiries with the neighbors, they broke into the store where they found everything in disarray, but only a small amount of money taken. Mr. Jonni found his father's body in one of the rooms, bound with ropes. He testified that his father had been murdered and he claimed that a document in Indonesian was a record of his father's death that confirmed it was a homicide. Mr. Jonni said that his family had to pay the police to investigate. The police considered it a robbery ending in murder and they arrested and prosecuted

-4-

his father's gardener, who went to jail for seven or eight years. He claimed that the killer yelled out in court something to the effect of "[W]e are united Muslims" and threatened that he would find Mr. Jonni's family after he was released from jail. Admin. R. at 108. At his asylum hearing, he could not recall the killer's name.

After his father's death, his mother sold the store and they moved to Malang, where they lived in a small, predominately-Chinese area. He did not testify regarding any problems there until 1998 or 1999, when he said that the family saw people walking around their house, including someone who looked like the man who killed his father. At that point the killer had been released from jail. Mr. Jonni then moved to Bali, where he said the people are mostly Hindu and look almost Chinese. In Bali he felt safe and experienced no discrimination. When asked why he left Bali, he said that he learned from his mother, who had moved to a different city, that strangers were asking about his family and he knew the killer could still find him. He said his mother had been to the United States on vacation. She liked it here, so she recommended that if he did not feel safe in Bali, he should take a vacation here and see if he liked it too.

Mr. Jonni testified that his brother came to the United States with him, also overstayed his non-immigrant visa, and also filed an asylum application. His brother's application was denied two months before Mr. Jonni's hearing. He admitted that he failed to indicate in his application that his brother had applied

for asylum. He testified that his mother and sister moved to the Netherlands in 2002 and he said they were seeking permanent residence there at the time of the hearing. He admitted that this testimony was contrary to the statement in his application that his mother and sister still lived in Indonesia. He also acknowledged that, after his father's killer had been released from jail, he traveled outside of Indonesia (to China in 1998 and to Hong Kong in 1999), and that he returned to Indonesia after each trip, despite his claim that he feared retaliation by his father's killer.

## C. The IJ's Decision

The IJ considered documents submitted by Mr. Jonni, including the 2003 Department of State Country Reports for Indonesia and newspaper articles. The IJ did not admit into evidence documents that Mr. Jonni submitted on the day of the hearing, including several that had not been translated into English. Based on the evidence presented, the IJ was unable to reach a conclusion regarding the cause of his father's death, finding that Mr. Jonni's "testimony was not sufficiently detailed, consistent or believable to provide a plausible and coherent account for the basis of his fears and thus [could not] suffice to establish his eligibility for asylum without corroborating evidence." Admin. R. at 58. The IJ concluded that corroborating evidence was available. The IJ also noted the discrepancies between Mr. Jonni's statements in his application and his

testimony, his failure to provide documents translated into English, and his failure to leave Indonesia soon after his father's killer was released from jail.

Focusing on his testimony that he felt safe in Bali, the IJ further concluded that he failed to show a countrywide threat of persecution. The IJ also found that Mr. Jonni's asylum application was not filed within the one-year statutory period and he failed to show extraordinary or changed circumstances sufficient to excuse his delay. Because he did not establish eligibility for asylum, the IJ found that Mr. Jonni also failed to satisfy the higher standard of eligibility for restriction on removal. The IJ denied Mr. Jonni's applications for asylum, restriction on removal, and relief under CAT, but granted him voluntary departure.

### D. BIA Appeal

Mr. Jonni appealed to the BIA. In his appeal brief he argued that the IJ failed to make a credibility finding, and therefore he was entitled to a "favorable inference." Admin. R. at 9. He also argued that the IJ should have found that he was targeted for persecution based on his membership in a particular social group–his family. Finally, he contended that his father's murder was a hate crime and that the IJ erred in not recognizing that "persecution of one family member amounts to a threat against all [family members]." *Id.* A single member of the BIA issued a brief order affirming the IJ's decision. The BIA agreed with the IJ's conclusion that Mr. Jonni's asylum application was untimely and that he failed to establish an exception to the one-year deadline, based upon extraordinary or

changed circumstances. Relying on this court's decision in *Tulengkey v. Gonzales*, 425 F.3d 1277 (10th Cir. 2005), it also agreed with the IJ that Mr. Jonni failed to show a clear probability that he will suffer persecution in Indonesia because he is Chinese and Christian. The BIA specifically concurred with the IJ's reasoning that the circumstances of Mr. Jonni's father's death were not clear from the record and did not establish past persecution.

### E. Petition for Review

Mr. Jonni filed a timely petition for review. He first argues that the transcript of his testimony contains so many omissions where his statements were indiscernible that he was deprived of a meaningful review by the BIA. He claims that these omissions prejudiced him, both respect to the BIA's conclusions regarding his explanation for filing a late asylum application and with regard to the merits of his applications for relief.

He also argues that the BIA erred in finding him ineligible for restriction on removal. He contends that his evidence established past persecution and that it is more likely than not that he will suffer future persecution if removed to Indonesia. As to the probability of future persecution, he argues that the 2003 Country Reports on Human Rights Practices for Indonesia alone establish that "Chinese-Indonesian Christians are subject to a pattern and practice of persecution in Indonesia." Pet. Br. at 23. He urges this court to adopt the Ninth Circuit's "disfavored group" standard as stated in *Sael v. Ashcroft*, 386 F.3d 922

-8-

(9th Cir. 2004) and he challenges the BIA's determination that he could relocate within Indonesia. Finally, he argues that the IJ erred in denying him relief under CAT.

## II. *Jurisdiction*

We must first determine whether we have jurisdiction to review the issues raised in Mr. Jonni's petition. *See Diallo v. Gonzales*, 447 F.3d 1274, 1281 (10th Cir. 2006) ("We have jurisdiction to determine our jurisdiction." (quotation omitted)). Our jurisdiction to review a final order of removal arises under 8 U.S.C. § 1252(a)(1), but it is not unlimited. A petitioner must first exhaust his administrative remedies by raising his claims of error in his appeal to the BIA. *See* 8 U.S.C. § 1252(d)(1). His failure to do so deprives this court of jurisdiction. *See Sidabutar v. Gonzales*, No. 06-9576, __ F.3d __, 2007 WL 2743672, at *2 (10th Cir. Sept. 21, 2007) ("[W]e generally assert jurisdiction only over those arguments that a petitioner properly presents to the BIA."). Mr. Jonni raises several claims of error in his petition for review that he did not address in his BIA appeal. As to some of these claims, we do not have jurisdiction.

First, Mr. Jonni did not raise his due process claim in his BIA appeal and he provides no explanation for his failure to do so. Nor did the BIA take up the issue on its own and rule on it. *See id.* at *5 ("[W]e assert jurisdiction over the matters directly ruled on by the BIA."). Mr. Jonni certainly could have argued to the BIA that the incomplete transcript precluded any meaningful review. *See*

*Rivera-Zurita v. INS*, 946 F.2d 118, 120 n.2 (10th Cir. 1991) ("Judicial review does not extend to points the alien could have made before the Board but did not."). And the BIA could have provided him the relief he now seeks: a remand to the IJ for a new hearing. *See Akinwunmi v. INS*, 194 F.3d 1340, 1341 (10th Cir. 1999) (applying exhaustion rule to due process claims regarding "administratively correctable procedural errors"). Thus, we do not have jurisdiction to review his due process claim.[2]

The BIA concluded that Mr. Jonni failed to appeal the IJ's denial of his application for relief under CAT and therefore it explicitly declined to address that issue. He failed to mention in his brief to the BIA either CAT or any likelihood that he would be tortured upon his return to Indonesia. Nor did he raise with the BIA the argument he now makes: that the IJ failed to address the standard for relief under CAT and denied his application without any rationale. Again, we see no reason why Mr. Jonni could not have included this claim in his BIA appeal. Consequently, he failed to exhaust his administrative remedies and we do not have jurisdiction to review the denial of his application for relief under CAT.

---

[2]     The BIA determined that Mr. Jonni's asylum application was untimely and affirmed the IJ's denial of asylum on that basis. His only challenge to that ruling is based upon the omissions in the transcript of his testimony. Because we have no jurisdiction to review his due process claim, we do not address the agency's denial of asylum.

Regarding the BIA's denial of restriction on removal, Mr. Jonni did address past persecution in his BIA appeal, but he failed to make any of the arguments he now makes regarding the probability of future persecution. We would ordinarily conclude that he failed to exhaust his administrative remedies with respect to all of these arguments, but under *Sidabutar* we may review any claim that the BIA considered on the merits sua sponte. *See* 2007 WL 2743672, at *5. The BIA considered and ruled on whether Mr. Jonni could relocate within Indonesia, such that he is ineligible for restriction on removal.

Accordingly, we have jurisdiction to review only Mr. Jonni's claims of error regarding past persecution and relocation, as they relate to his application for restriction on removal. The remainder of his petition for review is dismissed for lack of jurisdiction.

### III. Standard of Review

"We look to the record for substantial evidence supporting the agency's decision: Our duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006) (quotations and alteration omitted). "[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary . . . ." 8 U.S.C. § 1252(b)(4)(B). "We may not weigh the evidence, and we will not question the immigration judge's or BIA's credibility determinations as long as

-11-

they are substantially reasonable." *Woldemeskel v. INS*, 257 F.3d 1185, 1192 (10th Cir. 2001). We review the agency's legal determinations de novo. *See Lockett v. INS*, 245 F.3d 1126, 1128 (10th Cir. 2001).

Because a single member of the BIA affirmed the IJ's decision in a brief order, *see* 8 C.F.R. § 1003.1(e)(5), we review the BIA's opinion rather than the decision of the IJ, *see Uanreroro*, 443 F.3d at 1204. "However, when seeking to understand the grounds provided by the BIA, we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Id.* Here, where the BIA expressly or implicitly incorporated the IJ's reasoning, but did not include its own substantive discussion, we will consult the IJ's decision for guidance in determining the BIA's reasoning. *See Sarr v. Gonzales*, 474 F.3d 783, 790 (10th Cir. 2007).

### IV.  Restriction on Removal

Mr. Jonni may not be removed to Indonesia "if the Attorney General decides that [his] life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The burden of proof for restriction on removal is significantly higher than for asylum. In order to be eligible for restriction on removal, Mr. Jonni must establish a clear probability of persecution on account of one of the factors in § 1231(b)(3)(A). *See Woldemeskel*, 257 F.3d

at 1193. Thus, he must present evidence establishing that it is more likely than not he will be subject to persecution based on his ethnicity and religion. *See id.*

The IJ concluded that Mr. Jonni failed to satisfy the lower burden of proof required for asylum, and therefore he also failed to satisfy the clear probability standard required for restriction on removal. *See Uanreroro*, 443 F.3d at 1202. The BIA affirmed the IJ's determination. It specifically agreed with the IJ's reasoning that the death of Mr. Jonni's father, under circumstances unclear from the record, did not establish past persecution. And as to future persecution, the BIA determined that Mr. Jonni could relocate within Indonesia and was therefore ineligible for relief.

### A. Past Persecution

Evidence of past persecution is relevant to a claim for restriction on removal. *See Niang v. Gonzales*, 422 F.3d 1187, 1195-96 (10th Cir. 2005); 8 C.F.R. § 1208.16(b)(1)(i) ("If the applicant is determined to have suffered past persecution . . . it shall be presumed that the applicant's life or freedom would be threatened in the future in the county of removal . . . ."). Because the BIA adopted the IJ's rationale in finding that Mr. Jonni failed to establish past persecution, without including its own substantive discussion, we look to the IJ's more complete explanation of the grounds relied upon by the BIA. *See Uanreroro*, 443 F.3d at 1204.

Mr. Jonni contends that the evidence of his father's murder and the killer's subsequent threats against him compel the conclusion that he was subjected to past persecution. This argument ignores the IJ's determination that Mr. Jonni's testimony was insufficient to establish his eligibility for asylum without corroborating evidence. The IJ further concluded that corroborating evidence was available. The BIA agreed with the IJ that the circumstances of Mr. Jonni's father's death were unclear from the record and therefore did not establish past persecution. Mr. Jonni does not challenge these determinations, either with respect to the necessity of corroborating evidence or its availability.[3] The agency's factual findings and credibility determinations–including the determination that corroborating evidence is available–"are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also id.*, § 1252(b)(4)(D) ("No court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence . . . unless the court finds . . . that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable."). We cannot conclude that any reasonable fact finder would be compelled to find past persecution based on the record in this case. Therefore, we hold that the

---

[3]     Mr. Jonni asserts that "[t]he BIA did not challenge [his] credibility in any way whatsoever," Pet. Br. at 29, but it is clear that the BIA relied on the same ground as the IJ in finding no past persecution, despite Mr. Jonni's testimony regarding his father's murder.

BIA's finding that Mr. Jonni failed to establish past persecution is supported by substantial evidence in the record.

### B. Relocation

The IJ found that Mr. Jonni did not establish a threat of persecution throughout Indonesia, based upon his testimony that he had lived peacefully in Bali. The BIA agreed with the IJ that he failed to establish a clear probability of future persecution on this basis, citing *Tulengkey v. Gonzales*, 425 F.3d 1277 (10th Cir. 2005). Like Mr. Jonni, the petitioner in *Tulengkey* applied for asylum, claiming a fear of persecution in Indonesia because of her Chinese ethnicity and Christian religion. *Id.* at 1281. The IJ found, however, that it was possible for her to relocate to a few large cities or districts within the country where the population was predominately Christian. *Id.* Because the petitioner failed to challenge the IJ's findings, we concluded that her claim of a well-founded fear of future prosecution necessarily failed. *Id.* at 1282.

The same reasoning applies with respect to an application for restriction on removal:

> [A]n applicant [for restriction on removal] cannot demonstrate that his or her life or freedom would be threatened if the [IJ] finds that the applicant could avoid a future threat to his or her life or freedom by relocating to another part of the proposed country of removal and, under all the circumstances, it would be reasonable to expect the applicant to do so.

8 C.F.R. § 1208.16(b)(2); *see also Niang*, 422 F.3d at 1195-96 (addressing relevance of opportunity to relocate to eligibility for restriction on removal). Further, where the applicant fails to establish past persecution, he bears the burden to establish that relocation would be unreasonable, unless he claims government or government-sponsored persecution. 8 C.F.R. § 1208.16(b)(3)(i).

Mr. Jonni contends that his case is distinguishable from *Tulengkey*, in which the petitioner did not argue that relocation would be a hardship. *See* 425 F.3d at 1282. He claims that he would not be safe even in Bali, basing his argument on two factors: his past persecution and the terrorist bombings that occurred in Bali after he left Indonesia. We have already concluded that he failed to establish past persecution. And he fails to show that any reasonable fact finder would be compelled to conclude, based solely upon the 2002 bombings, that it would be unreasonable for Mr. Jonni to relocate to Bali because he is Chinese and Christian. We hold that the agency's determination that Mr. Jonni failed to show a clear probability of future persecution because of his ability to relocate within Indonesia is supported by substantial evidence.

### *V. Conclusion*

Mr. Jonni's petition for review is DISMISSED in part for lack of jurisdiction.  The remainder of the petition is DENIED.

Entered for the Court


Bobby R. Baldock
Circuit Judge