**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 23, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MEI ENG JOE,

          Petitioner,

v.

MICHAEL B. MUKASEY,
Attorney General,[*]

          Respondent.

No. 07-9524
(Petition for Review)

---

**ORDER AND JUDGMENT**[**]

---

Before **TACHA**, **EBEL**, and **MURPHY**, Circuit Judges.

---

      Petitioner Mei Eng Joe seeks review of the denial of her application for

restriction on removal by the Board of Immigration Appeals (BIA).  We dismiss

in part and deny in part her petition for review.

---

[*]      On November 9, 2007, Michael B. Mukasey became the United States
Attorney General.  In accordance with Rule 43(c)(2) of the Federal Rules of
Appellate Procedure, Mr. Mukasey is substituted for Alberto R. Gonzales as the
respondent in this action.

[**]      After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel.  It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

### I.  Background

Ms. Joe is a citizen of Indonesia.  She was admitted to the United States on a non-immigrant visa on July 19, 2000, with authorization to attend San Diego State University.  She admits that she never attended that school and she overstayed her six-month authorization period in the United States.  In 2002, Ms. Joe submitted applications for asylum, restriction on removal,[1] and relief under the Convention Against Torture (CAT).  She claimed past persecution and a well-founded fear of future persecution in Indonesia, based upon her Chinese ethnicity and her Christian religion.  The Department of Homeland Security initiated removal proceedings against Ms. Joe in March 2002 and she conceded removability.

Ms. Joe testified in support of her applications at a hearing before an immigration judge (IJ).  She stated that she was born in 1973 in Jakarta, Indonesia, where she lived until 2000 when she entered the United States.   She attended school in Jakarta from the elementary level through high school and she graduated from a university in Jakarta in 1994 with a degree in management.

---

[1]     The parties and the agency use the term "witholding of removal." "[A]mendments to the Immigration & Naturalization Act made by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) changed the terminology to 'restriction on removal.'  *See* 8 U.S.C. § 1231(b)(3)[.]  Since this case arose after the effective date of the IIRIRA, we refer to this provision as 'restriction on removal.'"  *Sidabutar v. Gonzales*, 503 F.3d 1116, 1117 n.1 (10th Cir. 2007) (citation omitted).

Ms. Joe traveled safely on foot or by bus from her home to each of these schools. During this time she did not suffer any harm, aside from having her wallet stolen in 1994. After graduating from the university, she worked in the accounting department of a company in Jakarta from 1994 to 2000.

Ms. Joe testified that nothing happened to her until May 1998, when there were riots throughout Jakarta. She said that her employer sent her home in a car one day during the riots, but the driver of the car stopped at some point close to her home and made her get out and walk the rest of the way. On her walk home she observed people lighting oil-filled bottles on fire and throwing them at buildings, and she witnessed that some of the buildings were burning. She testified she was about twenty feet away from these people. She covered her face with a handkerchief and kept walking. She did not look at the rioters again and she said they did not pay any attention to her. She said she had thoughts of being raped or killed, but she did not observe anyone being harmed and she arrived home safely.

According to Ms. Joe, her father's store was burned down during the same riots in 1998. She said that the family did not witness the store being burned, because her father had closed it after hearing there was going to be a demonstration. But she believes that the store was targeted by the rioters because her family is Chinese. She said that stores marked as being owned by Muslims

were not burned. Her father opened a new store two or three months after the riots.

Ms. Joe testified that nothing else happened to her or anyone else in her family after these incidents she described in 1998, except that her wallet was stolen again in 1999. She said that her parents and her two sisters, all of whom are also Chinese and Christian, continue to live in Indonesia without experiencing any harm. She said that her mother walks safely from her home to the market and to her father's store.

In support of her fear of future persecution, she submitted newspaper articles and various reports on the conditions in Indonesia. The administrative record includes the State Department 2004 Country Reports on Human Rights Practices and the 2004 International Religious Freedom Report regarding Indonesia. She testified about a recent bombing in Bali and she said that a friend of a friend was killed in a Catholic church that was bombed on Christmas Eve in 2000. She also testified that sometime after she left Indonesia a bomb was found by the front door of her family's church, but she did not say that anyone was harmed. She said she did not want to go home because she was afraid there would be bombs everywhere in Indonesia. She was also certain that her father's store would be burned again. She stated, regarding her fear of returning to Indonesia because she is Chinese and Christian: "It's possible I could die. It's

possible that I wouldn't be allowed to go to church, and it's also possible that they will try to convert all of us to become Muslims." Admin. R. at 122.

The IJ denied Ms. Joe's applications for asylum, restriction on removal, and relief under CAT. The IJ noted that she bore the burden of proof on her application for restriction on removal. Regarding her claim of past persecution, the IJ acknowledged her testimony regarding having her wallet stolen and the incidents she described during the civil unrest in 1998. But he found that she suffered no harm the day that she witnessed the riots and that there was no evidence that the thefts were related to her ethnicity. As to the burning of her father's store, the IJ held that single incident "is not sufficient for the court to find that there is a likelihood that [Ms. Joe] would be persecuted upon return to Indonesia." *Id.* at 90. Noting that she and her family have lived a long time in Indonesia without incident, the IJ concluded that nothing in the record indicated that the majority of Chinese Christians in that country have suffered in the past or are likely to suffer persecution in the future. The IJ acknowledged the possibility that Ms. Joe might be persecuted upon her return to Indonesia, but held that the evidence did not support a finding of a clear probability of persecution, as required for restriction on removal.

Ms. Joe appealed to the BIA. She argued that the evidence established past persecution and that the government failed to overcome the resulting presumption of future persecution. Alternatively, she contended that the evidence showed it is

more likely than not she will be subject to persecution in Indonesia based on her ethnicity and religion. A single member of the BIA issued a brief order affirming the IJ's decision. Ms. Joe's petition for review challenges only the BIA's denial of restriction on removal.

## II. Standards of Review

"We look to the record for substantial evidence supporting the agency's decision: Our duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006) (quotations and alteration omitted). "[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary . . . ." 8 U.S.C. § 1252(b)(4)(B). "We may not weigh the evidence, and we will not question the immigration judge's or BIA's credibility determinations as long as they are substantially reasonable." *Woldemeskel v. INS*, 257 F.3d 1185, 1192 (10th Cir. 2001). We review the BIA's legal determinations de novo. *See Lockett v. INS*, 245 F.3d 1126, 1128 (10th Cir. 2001).

Because a single member of the BIA affirmed the IJ's decision in a brief order, *see* 8 C.F.R. § 1003.1(e)(5), we review the BIA's opinion rather than the decision of the IJ, *see Uanreroro*, 443 F.3d at 1204. "However, when seeking to understand the grounds provided by the BIA, we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Id.*

-6-

### III. Discussion

Ms. Joe challenges the BIA's denial of restriction on removal. She may not be removed to Indonesia "if the Attorney General decides that [her] life or freedom would be threatened in that country because of [her] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The burden of proof for restriction on removal is significantly higher than for asylum. In order to be eligible for restriction on removal, Ms. Joe must establish a clear probability of persecution on account of one of the factors in § 1231(b)(3)(A). *See Woldemeskel*, 257 F.3d at 1193. Thus, she must present evidence establishing that it is more likely than not she will be subject to persecution based on her ethnicity and religion. *See id.* Evidence of past persecution is relevant to a claim for restriction on removal. *See Sidabutar v. Gonzales*, 503 F.3d 1116, 1123 (10th Cir. 2007) ("An alien may create a rebuttable presumption of eligibility for restriction on removal by . . . demonstrating 'past persecution' in the proposed country of removal on account of one of the protected grounds . . . ."); 8 C.F.R. § 1208.16(b)(1)(i).

Ms. Joe contends that the BIA erred in affirming the IJ's determination that she did not face a clear probability of persecution if she returned to Indonesia. First, she argues that she demonstrated past persecution, basing her claim on the burning of her father's store during the riots in Jakarta in 1998, as well as her own experience in witnessing the rioting. She notes that neither the IJ nor the

BIA expressly denied that she suffered past persecution. Absent a finding of no past persecution by the IJ, she contends that the burden shifted to the government to overcome the presumption of her entitlement to restriction on removal, which it failed to do.

The government counters that the IJ did determine that Ms. Joe failed to establish past persecution, albeit implicitly. The government bases this conclusion on the IJ's discussion of her evidence related to the 1998 riots, as well as the fact that the IJ did not shift the burden of proof to the government. Moreover, the government argues that Ms. Joe did not raise the issue of the lack of an explicit finding in her BIA appeal. In her reply brief, Ms. Joe argues for the first time that it was error for the IJ to fail to make an explicit determination on past persecution, citing cases in which other circuits have remanded to allow the IJ to make a specific finding.

Ms. Joe did not raise in her BIA appeal the arguments she now makes regarding the lack of an explicit finding by the IJ on past persecution. Instead, she argued only that her evidence demonstrated past persecution, evidently agreeing with the government that the IJ made a determination against her on that issue. A petitioner must first exhaust her administrative remedies by raising her claims of error in her appeal to the BIA. *See* 8 U.S.C. § 1252(d)(1). Ms. Joe's failure to do so deprives this court of jurisdiction. *See Sidabutar*, 503 F.3d at 1118 ("[W]e generally assert jurisdiction only over those arguments that a

petitioner properly presents to the BIA."). Consequently, we do not have jurisdiction to review Ms. Joe's claims of error regarding the IJ's implicit determination on the issue of past persecution and we dismiss that portion of her petition.

Ms. Joe nonetheless argues that the BIA erred in failing to find past persecution on the record in this case. "Persecution is the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive, and requires more than just restrictions or threats to life and liberty." *Tulengkey v. Gonzales*, 425 F.3d 1277, 1280 (10th Cir. 2005) (quotation omitted). Ms. Joe testified that she never personally suffered any harm in the twenty-seven years that she lived in Indonesia, aside from having her wallet stolen. Although she also described witnessing the 1998 riots while walking home one day, that evidence is insufficient to compel a finding of past persecution. *See id.* at 1281 (affirming finding of no past persecution based upon a robbery resulting in minor injury to the petitioner and her witnessing of a Muslim mob's rough treatment of other people eight years later). Nor can we conclude that every reasonable fact finder would be compelled to find past persecution of Ms. Joe based on the burning of her father's store, which was quickly reopened and never harmed again–especially in light of the fact that Ms. Joe's immediate family continues to live in Indonesia without incident. *See Yuk v. Ashcroft*, 355 F.3d 1222, 1234 (10th Cir. 2004) (affirming finding of no

past persecution based on torture and death of Mr. Yuk's son, when petitioners presented no evidence of further reprisals, they stayed in Cambodia for twelve more years, and other family members continued to live there without experiencing further persecution). In short, substantial evidence supports the conclusion that Ms. Joe did not suffer past persecution.

Finally, Ms. Joe argues that she demonstrated a clear probability of future persecution. She criticizes the BIA for resting its assessment of the risk of future persecution on the fact her family continues to live unharmed in Indonesia. She points to evidence of the Indonesian government's occasional tolerance of discrimination against and abuse of religious groups; a bombing at a Jakarta hotel in 2003 by Islamic extremists; and attacks on Christian villages in another part of Indonesia. She also refers generally to the 2004 Country Reports. This evidence fails to meet Ms. Joe's high burden to show that it is more likely than not that she would be subject to persecution on the basis of her ethnicity or religion upon returning to Indonesia. *See Sidabutar*, 503 F.3d at 1123-24. The BIA's denial of restriction on removal is supported by substantial evidence.

## IV. Conclusion

Ms. Joe's petition for review is DISMISSED in part for lack of jurisdiction.

The remainder of the petition is DENIED.

Entered for the Court

Deanell Reece Tacha
Circuit Judge