**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 20, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JERMIA PAOMEY,

     Petitioner,

v.

MICHAEL B. MUKASEY, Attorney
General,

     Respondent.

No. 06-9585
(Board of Immigration Appeals)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **EBEL**, and **HOLMES**, Circuit Judges.

---

     Petitioner Jermia Paomey, a citizen of Indonesia, seeks review of a Board

of Immigration Appeals ("BIA") decision denying his request for restriction on

---

[*]After examining the briefs and the appellate record, this panel has
determined unanimously that oral argument would not materially assist the
determination of this appeal. See Fed. R. App. P. 34(a)(2) and 10th Cir. R.
34.1(G).  The case is therefore ordered submitted without oral argument.  This
order and judgment is not binding precedent, except under the doctrines of law of
the case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

removal.[1]  We exercise jurisdiction pursuant to 8 U.S.C. § 1252 and deny

Paomey's petition.

## I. BACKGROUND

Paomey lived his entire life in Indonesia before entering the United States

on January 3, 1998.  Paomey was admitted to the United States as a nonresident

visitor who was authorized to remain in the country until July 2, 1998.  This date

came and passed, however, and Paomey remained in the United States without

authorization.

At some point in 2003, the INS became aware of Paomey's unauthorized

presence in the United States.  Believing that Paomey's unauthorized presence

violated Section 237(a)(1)(B) of the Immigration and Nationality Act, on April 3,

2003, the INS initiated removal proceedings against Paomey.  In a subsequent

appearance before an Immigration Judge ("IJ"), Paomey admitted that the INS'

allegations were true and that he had overstayed his welcome.  Nevertheless,

Paomey contended that he was entitled to asylum, restriction on removal, and

---

[1]  "Restriction on removal was known as *withholding of removal* before amendments to the [Immigration and Nationality Act (INA)] made by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. No. 104-208, 100 Stat. 3009. The regulations under the INA, however, retain the former term *withholding of removal*, *see, e.g.*, 8 C.F.R. § 208.16(b), and both the [Immigration Judge] and the BIA have referred to withholding of removal. Nevertheless, we use the statutory term restriction on removal."  Ismaiel v. Mukasey, 516 F.3d 1198, 1200 n.2 (10th Cir. 2008).

protection under the Convention Against Torture ("CAT"). On September 27, 2004, a merits hearing on these issues occurred before the Immigration Court.

At the merits hearing, Paomey testified that although he is of the Mandonese ethnicity, he appears to be Chinese. As a result of his Chinese appearance, Paomey asserted that while living in Indonesia he had stones thrown at him while driving his car and was treated differently when he applied for an identification card. Paomey further asserted that Chinese are subjected to "a lot of violence" in Indonesia and that he was fearful he would be the subject of such violence due to his Chinese appearance.

In addition to problems resulting from his appearance, Paomey also testified that while living in Indonesia he experienced trouble on account of his religion: Jehovah's Witness. According to Paomey, "all the natives do not like Christians and Jehovah Witnesses are considered a Christian." Paomey recounted that one time he was taken to a police station and interrogated because he had gone from house to house proselytizing, as was required by his faith. Paomey asserted that he was told that if he engaged in such conduct again, he would be "put in jail." According to Paomey, he continued to proselytize from door to door without incident, but did so in a "sort of undercover" manner.

At the conclusion of the merits hearing, the IJ entered an oral decision in which he denied Paomey's requests for asylum, restriction on removal, and relief under CAT. In relation to Paomey's claims regarding his Chinese appearance, the

IJ asserted that Paomey failed to "develop[] this aspect of his case during the hearing." According to the IJ, Paomey's "past history in Indonesia would indicate that his suffering on account of his alleged Chinese looks would not rise to the level of past persecution or future persecution."

The IJ was also dismissive of Paomey's religious affiliation claims, indicating that although "[t]he background materials ... make[] it clear that there is religious discrimination in Indonesia ... it seems unlikely that [Paomey] would suffer actual persecution in the future upon return to Indonesia." According to the IJ, although "proselytizing by a Christian may be found illegal by a Muslim police official ... persecution for proselytizing would certainly not be the policy of the Government of Indonesia." With this in mind, the IJ concluded that Paomey "ha[d] not shown that it [was] more likely than not that he would be persecuted or tortured if he [was] returned to Indonesia. Therefore, restriction on removal and relief under the United Nations Convention against Torture may not be granted."

The IJ also denied Paomey's request for asylum. This claim was rejected on the ground that Paomey failed to file his application for asylum within one year of entering the United States. Although Paomey asserted that he was not aware of this deadline, the IJ countered that he did not believe Paomey's "lack of awareness of the one year filing rule [was] sufficient to excuse him from filing." In this regard, the IJ concluded that "it would seem that if the Court were to

- 4 -

accept a respondent's simple denial of knowledge of the one year filing rule, that the exception would completely obliterate the rule."

Paomey appealed the IJ's decisions to the BIA. In his appeal, Paomey argued that the IJ abused his discretion in denying Paomey's application for restriction on removal on the basis of his religion and perceived ethnicity. Paomey further asserted that the IJ abused his discretion in finding that Paomey had failed to demonstrate he was entitled to an exemption from the one-year deadline to seek asylum.

In a brief per curiam order, the BIA rejected Paomey's appeal and adopted and affirmed the decision of the IJ. According to the BIA, there was "no clear error in the [IJ's] factual findings, or in his determination that [Paomey] has not established changed circumstances or extraordinary circumstances which waive the bar to asylum." Furthermore, the BIA noted that Paomey "did not meet his burden of proof to show past persecution on account of harassment based on perceived Chinese ethnicity and/or one police interrogation which took place 10 years ago due to his proselytization as a Jehovah's Witness." With this in mind, the BIA also concluded that Paomey failed to meet "his burden of proof in establishing a clear probability of persecution on account of his Christian

religious beliefs or perceived ethnicity." Paomey now seeks review of the BIA's decision denying his request for restriction on removal.[2]

## II. DISCUSSION

### A. Standard of Review

When reviewing BIA decisions, an appellate court must "look to the record for 'substantial evidence' supporting the agency's decision: '[O]ur duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole.'" Uanreroro v. Gonzales, 443 F.3d 1197, 1204 (10th Cir. 2006) (alteration in original) (quoting Elzour v. Ashcroft, 378 F.3d 1143, 1150 (10th Cir. 2004)). Agency "findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." Sviridov v. Ashcroft, 358 F.3d 722, 727 (10th Cir. 2004) (citing 8 U.S.C. § 1252(b)(4)(B)) (other internal citations and quotation marks omitted). We do not "weigh the evidence or evaluate the witnesses' credibility." Woldemeskel v. INS, 257 F.3d 1185, 1189 (10th Cir.

---

[2] Paomey's brief does not appear to explicitly challenge the IJ's decision denying Paomey's asylum claim on the ground that it was untimely. In the event that Paomey's brief may be interpreted to make such a challenge, this court is without jurisdiction to consider the matter. Such decisions may only be reviewed if they involve "'constitutional claims or questions of law.'" Diallo v. Gonzales, 447 F.3d 1274, 1281 (10th Cir. 2006). Neither is at issue here.

Additionally, Paomey's brief does not challenge the denial of his claim arising under the CAT. Thus, the only issue that is properly before this court is whether Paomey is entitled to restriction on removal.

2001) (alteration and quotation marks omitted). Legal determinations of the BIA are reviewed de novo. See Lockett v. INS, 245 F.3d 1126, 1128 (10th Cir. 2001).

The BIA issued its decision in a brief order signed by a single member of the Board adopting and affirming the IJ's decision. We therefore review the BIA's decision as the final order of removal but "may consult the IJ's opinion to the extent that the BIA relied upon or incorporated it." Sarr v. Gonzales, 474 F.3d 783, 790 (10th Cir. 2007).

## B. Restriction on Removal

Paomey may not be removed to Indonesia "if the Attorney General decides that [his] life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). "The burden of proof for restriction on removal is significantly higher than for asylum. In order to be eligible for restriction on removal, [Paomey] must establish a clear probability of persecution on account of one of the factors in § 1231(b)(3)(A)." Joe v. Mukasey, No 07-9524, 2008 WL 193238, *3 (10th Cir. Jan. 23, 2008) (unpublished). "Thus, [Paomey] must present evidence establishing that it is more likely than not [he] will be subject to persecution based on [his] ethnicity [or] religion. Evidence of past persecution is relevant to a claim for restriction on removal." Id.

"Persecution is the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive, and requires

more than just restrictions or threats to life and liberty." Tulengkey v. Gonzales, 425 F.3d 1277, 1280 (10th Cir. 2005) (quotation omitted). According to Paomey, there are two bases on which he will be persecuted should he be returned to Indonesia: (1) his Chinese appearance, and (2) his religious affiliation (Jehovah's Witness). Each of these bases will be considered in turn.

## 1. Chinese Appearance

Paomey first attempts to establish that he has been subjected to past persecution while living in Indonesia due to his Chinese appearance. In this regard, Paomey solely relies on incidents in which he had stones thrown at him while driving and encountered difficulties in obtaining an identification card. According to the IJ, this "past history in Indonesia would indicate that [Paomey's] suffering on account of his alleged Chinese looks would not rise to the level of past persecution or future persecution." We agree.

> "Although persecution is not defined in the INA, we have held that a finding of persecution requires the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive and must entail more than just restrictions or threats to life and liberty." Wiransane v. Ashcroft, 366 F.3d 889, 893 (10th Cir. 2004) (internal quotation omitted). *Compare* Tulengkey, 425 F.3d at 1281 (finding no past persecution where alien was robbed, fondled, and suffered a minor head injury); Kapcia v. INS, 944 F.2d 702, 704-05, 708 (10th Cir. 1991) (holding no past persecution where alien had twice been detained for two-day periods during which he was beaten and interrogated, whose parents' home had been searched, whose work locker had been repeatedly broken into, and who had been assigned poor work tasks, denied bonuses, and conscripted into the army, where he was constantly harassed); and Lie v. Ashcroft, 396 F.3d 530, 536 (3d Cir. 2005) ("[T]wo

isolated criminal acts, perpetrated by unknown assailants, which resulted only in the theft of some personal property and a minor injury, is not sufficiently severe to be considered persecution."); *with* Nazaraghaie v. INS, 102 F.3d 460, 463-64 (10th Cir.1996) (suggesting that asylum applicant's severe beating and ten month imprisonment on account of his political opinion constituted persecution).

Sidabutar v. Gonzales, 503 F.3d 1116, 1124 (10th Cir. 2007).

In the instant case, there are no allegations of imprisonment or severe beatings. Instead, Paomey's allegations amount to harassment. While the court is sympathetic with Paomey's claims and does not condone the harassment Paomey experienced, such harassment does not rise to the level of persecution.

In the absence of any past persecution based on his Chinese appearance, Paomey is not entitled to a presumption of future persecution. 8 C.F.R. § 1208.16(b)(2). Instead, Paomey must affirmatively show a clear probability of future persecution by demonstrating either that he would be singled out personally for persecution, or that he has "a reasonable fear of persecution because of [his] membership in a group subject to 'a pattern or practice of persecution.'" Woldemeskel, 257 F.3d at 1190. Paomey has failed to make any showing on either of these grounds, and therefore, has failed to establish a clear probability of future persecution in Indonesia based on his Chinese appearance.

## 2. Religious Affiliation

Paomey also asserts that he is entitled to restriction on removal based on his religious affiliation: Jehovah's Witness. In asserting that he was subjected to

persecution based on this affiliation while living in Indonesia, Paomey recounted a single incident that occurred in approximately 1994, when he was taken to a police station for proselytizing from house to house. According to Paomey, he was told that if he engaged in such an activity again, he would be put in jail. Nevertheless, Paomey continued to proselytize in a "sort of undercover" manner. The IJ concluded that this experience did not amount to past persecution. We agree.

As discussed in relation to Paomey's claim regarding his Chinese appearance, persecution requires something more than mere harassment. Based on this single incident, we "cannot conclude that any reasonable fact finder would be compelled to find past persecution based on the record in this case." Jonni v. Keisler, No. 07-9512, 2007 WL 3230401, at *6 (10th Cir. Nov. 1, 2007) (unpublished). The incident did not involve violence or any significant period of incarceration, and evidently was not so egregious so as to completely dissuade Paomey from engaging in such conduct in the future.

Again, in the absence of past persecution, Paomey is not entitled to a presumption of future persecution. 8 C.F.R. § 1208.16(b)(2). Instead, Paomey must affirmatively show a clear probability of future persecution by demonstrating either that he would be singled out personally for persecution, or that he has "a reasonable fear of persecution because of [his] membership in a group subject to a pattern or practice of persecution." Woldemeskel, 257 F.3d at

1190.  Paomey has made no claim that he would be singled out for persecution, and instead, appears to rely on the notion that Jehovah's Witnesses are subject to a pattern or practice of persecution in Indonesia.

Based on our review of the record, however, we cannot conclude that the evidence compels a finding that Jehovah's Witnesses face a pattern or practice of persecution in Indonesia.  "A pattern or practice of persecution entails something on the order of organized or systematic or pervasive persecution."  Sibuea v. Mukasey, No. 07-9508, 2007 WL 4554295, at *4 (10th Cir. Dec. 28, 2007) (internal quotation marks omitted) (unpublished).  While the material provided in the record certainly indicates that deplorable acts of violence and discrimination have been directed against Indonesians on the basis of their religions, the evidence in no way supports the conclusion that Jehovah's Witnesses have suffered organized, systematic, or pervasive persecution in Indonesia.  On the contrary, the country report on Indonesia prepared by the United States Commission on International Religious Freedom asserts that, "[t]hough the [Indonesian] Constitution officially recognizes only five religious, it also states that other religions ... are not forbidden, and the practices of other religious are permitted."  Notably, "[t]he government lifted its ban on the Jehovah's Witnesses in June 2001."  Indeed, the State Department Report from 2003 reflects an easing of religious tensions in Indonesia, as it notes "a sharp drop in violence between Christians and Muslims in the provinces of Maluku, North Maluku, and Central

Sulawesi, [and notes that] inter-religious tolerance and cooperation improved during the year." (Id. at 210.) With such notions in mind, Paomey has failed to meet his burden of producing evidence that compels the conclusion he will be subject to persecution if returned to Indonesia.[3]

## CONCLUSION

The BIA did not err in dismissing Paomey's claims for restriction on removal, and accordingly, the instant petition for review is DENIED.


ENTERED FOR THE COURT


David M. Ebel
Circuit Judge

---

[3] Paomey's brief asserts that "recent country reports and news reports show that persecution of Christians in Indonesia is continuing, if not worsening." However, no citation to the administrative record is offered in support of this claim.