FILED
United States Court of Appeals
Tenth Circuit

October 16, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JOSE ESTUARDO
CANO-MANZANERO,

          Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

          Respondent.

No. 13-9526
(Petition for Review)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Judge, **ANDERSON**, Circuit Judge, and **BRORBY**, Senior
Circuit Judge.

     Petitioner Jose Estuardo Cano-Manzanero petitions for review of the Board of

Immigration Appeals' (BIA's) decision upholding the Immigration Judge's (IJ's)

denial of asylum and restriction on removal. We deny the petition for review.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.  Background

Petitioner, a native and citizen of Guatemala, illegally entered the United States in 2005.[1]  Two years later, he appeared at a master calendar hearing before an IJ in Los Angeles, California, where he conceded removability.  Later that year, he applied for asylum, restriction on removal, and protection under the Convention Against Torture (CAT).  Venue was changed and in May 2010, Petitioner appeared before a new IJ in Salt Lake City, Utah.  He reviewed Petitioner's prior concession on the record and continued the hearing.  At a subsequent preliminary hearing the IJ explained to Petitioner, in response to his inquiry, that if he wanted his brother to testify at his merits hearing, he would need to "file something" notifying the IJ of the witness "at least 15 days before [the] hearing."  Admin. R. at 187.  Neither Petitioner nor his counsel did so.

In February 2011, a merits hearing was held before the new IJ.  Petitioner testified that in Guatemala he had worked as a land-dispute mediator for the Commission of Conservation for Agreements of Peace, a non-governmental organization.  Petitioner's job was to visit communities where people were unlawfully squatting on national park land, inform them that their presence was illegal, and offer them options to relocate with the assistance of the Guatemalan

---

[1]      Petitioner's wife, Helen Corina Mendoza, accompanied him and is a derivative petitioner.

government. He testified that he feared for his safety while performing his job and ultimately left Guatemala because he "received . . . death threats" related to his employment. *Id.* at 206. He described two specific incidents.

In May 2005, he visited a community called Arroyo Macaballero for work. While discussing with the local leaders their illegal occupation of the land, armed individuals came out of the jungle and threatened Petitioner with insulting language and obscene words. They told him to "abandon the place" and that they "were not interested" in the Guatemalan government's options. *Id.* at 215. He and his colleagues were frightened by the threats and left. Petitioner did not suffer any physical harm and he did not report the incident to the police. He reported it to his supervisors though, and he believes that one of his supervisors reported it to the national civil police because those illegally occupying Arroyo Macaballero were forcibly evicted by the national civil police and the army.

Then, in mid-June 2005, Petitioner visited an area called Laguna del Tigre for work. He had been there before. He observed that although money was scarce in this community, many people had all-terrain vehicles, guns, and ammunition, and he suspected that they were involved with drug trafficking. During this visit, the community's leaders did not come forward, so Petitioner relayed his message and the options available. "After about a half-hour" the people "became angry" and "started shooting" guns "in the air." *Id.* at 224. He was told not to return and "heard people . . . say that" he would be "kill[ed]." *Id.* Petitioner and his colleagues ran to

their cars and safely departed. Petitioner reported the threats to the security for the national park reserves and the individuals illegally occupying Laguna del Tigre were forcibly evicted in August 2005.

Petitioner also testified that he and his wife received telephonic threats between late June 2005 and October 2005. The callers knew certain things about Petitioner and his family, such as when and where his children played, and the callers indicated that they intended to harm Petitioner and his family. Petitioner did not know the identity of the callers but said they "made [him] aware that they knew that [he] worked for . . . the Commission." *Id.* at 233. Petitioner was afraid to report these calls to the police but did so in October 2005. The police took the report and asked him to make an additional report to the public ministry. Fearing retaliation from the callers, Petitioner chose not to make another report, and, in November 2005, he and his wife fled the country.[2]

Finally, Petitioner testified that his wife's sister (who was married to Petitioner's brother) was killed in Guatemala in 2008. When asked whether her death had anything to do with his employment, Petitioner responded: "According to the police report, it was because they were stealing a computer from her." *Id.* at 270.

At the close of the merits hearing, the IJ concluded that Petitioner had failed to establish eligibility for asylum, had therefore failed to meet the higher standard for

---

[2]    They left their two children with Petitioner's mother until November 2007, at which time the children entered the United States illegally. Admin. R. at 266.

restriction on removal, and denied CAT relief, "to the degree that it is still sought." *Id.* at 82. The BIA, like the IJ, expressed concern with Petitioner's credibility and the asylum application's timeliness, but the BIA did not deny the application on either of those bases; rather, it reached the merits and dismissed Petitioner's appeal in a single-member decision, constituting the final order of removal. *Ritonga v. Holder*, 633 F.3d 971, 974 (10th Cir. 2011).[3]

## II. Discussion

We review purely legal questions decided by the BIA de novo, but we review its factual findings under the substantial-evidence standard. *Karki v. Holder*, 715 F.3d 792, 800 (10th Cir. 2013). Under this standard, "'administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)).

To be eligible for asylum, an applicant "must establish refugee status, which requires proof that his race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting [him]." *Id.* (internal quotation marks omitted). One central reason means that the protected ground cannot have played a minor role in the applicant's past treatment or fear of future harm. *Id.* at 800.

---

[3]     Petitioner did not specifically challenge the denial of CAT relief before the BIA, and he does not appear to be raising any CAT issues in this court.

### A.  Asylum and Restriction on Removal

Petitioner challenges the BIA's denial of his application for asylum and restriction on removal, arguing that the BIA erroneously concluded that he had failed to demonstrate past persecution or a well-founded fear of future persecution.  We disagree.

### *Past Persecution*

The BIA concluded that Petitioner had "not established a nexus between past persecution and his political opinion."  Admin. R. at 9.[4]  The BIA found that rather than Petitioner's political opinion, the people in Arroyo were motivated by "fear for their financial well-being if . . . forced to relocate," and that the people in Laguna del Tigre were motivated by "fear[] that [Petitioner's] efforts on behalf of the government would undercut their narcotics trafficking business."  Admin. R. at 9.  Petitioner does not dispute those findings.  Indeed, he ignores his burden of proving that his political opinion was a "central reason" for his "past treatment," *Karki*, 715 F.3d at 800-01.  *See Dallakoti v. Holder*, 619 F.3d 1264, 1268 (10th Cir. 2010) ("To reverse the BIA, the record must establish that any reasonable adjudicator would be compelled to conclude that one of the central reasons" those threatening the

---

[4]     Petitioner does not explicitly articulate his "political opinion" (imputed or otherwise) but asserts that his "persecutors believed that he shared the political opinion of the Guatemalan government in his attempts to convince them to relocate." Pet'r Br. at 14.

petitioner "targeted [him] was because of his . . . political beliefs.").[5]  Instead,

Petitioner takes issue with the BIA's determination that the telephonic death threats

he received and the callers' detailed knowledge of his family's daily life did not

constitute past persecution under *Vatulev v. Ashcroft*, 354 F.3d 1207 (10th Cir. 2003).

In support, he contends that his family was "specifically targeted and threatened in an

immediate and terrifying manner" and that "any person, especially a parent, would be

absolutely terrified by the threats made."  Pet'r Br. at 15.

In *Vatulev*, this court held that "[t]hreats alone generally do not constitute

actual persecution; only rarely, when they are *so* immediate and menacing as to cause

*significant* suffering or harm in themselves, do threats per se qualify as persecution."

354 F.3d at 1210 (emphasis added).  Here, the BIA acknowledged *Vatulev's*

teachings and concluded that "even assuming [Petitioner] had established a nexus,"

the threats Petitioner received "did not fall into the aforementioned category."

Admin. R. at 9.  We concur.  *See Ritonga*, 633 F.3d at 975 (observing that

persecution "entail[s] more than just restrictions or threats to life and liberty"

(internal quotation marks omitted)); *Tulengkey v. Gonzales*, 425 F.3d 1277, 1280-81

(10th Cir. 2005) (observing that "denigration, harassment, and threats" are

insufficient to establish persecution and finding no past persecution where alien was

---

[5]  Petitioner's request that we remand "for the BIA to consider, in the first instance, whether" he "established a nexus to the past persecution [he] suffered and the future persecution [he] fear[s]," disregards the BIA's explicit nexus finding and essentially asks this court to reweigh the evidence to find a nexus.  Pet'r Br. at 15-16. This, we cannot do.  *Sidabutar* v. *Gonzales*, 503 F.3d 1116, 1125 (10th Cir. 2007).

robbed, fondled, and suffered a minor head injury (internal quotation marks omitted)).  Moreover, Petitioner does not challenge the BIA's independently dispositive conclusion that he failed to demonstrate that any harm he had suffered was inflicted by the Guatemalan government or a group the government was unwilling or unable to control.[6]  *See Niang v. Gonzales*, 422 F.3d 1187, 1194-95 (10th Cir. 2005) (explaining that eligibility for asylum based on past persecution requires applicant to demonstrate past persecution was "committed by the government or forces the government is either unable or unwilling to control").  Accordingly, the BIA held that Petitioner failed to establish past persecution, and we are convinced that a reasonable factfinder would not be compelled to find otherwise.

*Fear of Future Persecution*

"Even without past persecution, [Petitioner] could still qualify for asylum by establishing a well-founded fear of future persecution."  *Tulengkey*, 425 F.3d at 1281 (internal quotation marks omitted).  For a fear of future persecution to be well-founded, it must be both "subjectively genuine and objectively reasonable."  *Id.*

---

[6]     In reaching this conclusion the BIA stated that Petitioner was not physically harmed in Guatemala, and it observed that "armed civil patrol, police, or armed forces forcibly evicted" those who refused to leave the illegally occupied land, which "clearly" demonstrates the Guatemalan government was responsive to Petitioner's complaints.  Admin. R. at 9.  Similarly, the BIA concluded that Petitioner's sister-in-law's murder did not demonstrate that any harm Petitioner suffered or feared was being perpetrated by the Guatemalan government or by a group it was unable or unwilling to control.  She "was the victim of a robbery. . . .  [The Petitioner's] wife . . . testified that her sister's stolen property was returned, and one person was apprehended in connection with the crime."  *Id.* at 10.

- 8 -

"Fear of persecution is not well-founded if the applicant can avoid persecution by relocating to another part of the country and it would be reasonable to expect [him] to do so." *Ritonga*, 633 F.3d at 977-78.

Petitioner's fear-of-future-persecution claim relies on the threats outlined above and his sister-in-law's murder. He argues that the BIA erred by not "specifically" assessing "under either the asylum or restriction on removal standard" his fear of future persecution, instead basing its decision on "the fact that Petitioner[] did not try to relocate to the capital city or to other cities." Pet'r Br. at 18. But the BIA's decision is perfectly sound. Where, as here, the BIA determines that an applicant cannot meet his burden of establishing that he could not reasonably relocate to another area within his country of nationality, and he does not controvert the BIA's relocation finding, his "claim of a well-founded fear of future persecution necessarily fails," *Tulengkey*, 425 F.3d at 1281. And, given the foregoing, we cannot conclude that a reasonable fact finder would be compelled to find a well-founded fear of future persecution.

Because Petitioner failed to demonstrate a well-founded fear of persecution under asylum standards, he necessarily fails to meet the higher standard for restriction on removal. *Karki*, 715 F.3d at 801.

B.    **Due Process**

Finally, Petitioner argues that this case must be remanded because the BIA failed to address his argument that the new IJ denied him due process by failing "to

- 9 -

state for the record" that he had familiarized himself with the case pursuant to 8 C.F.R. § 1240.1(b), and by not allowing Petitioner's brother to testify at Petitioner's merits hearing. Pet'r Br. at 12-13. Petitioner's arguments are meritless. *Cf. Niang*, 422 F.3d at 1197 (When the BIA "has failed to address a ground raised by an applicant in support of [his] claim, we should . . .remand *if the ground appears to have any substance*" (emphasis added)).

"To prevail on a due process claim, an alien must establish not only error, but prejudice." *Alzainati v. Holder*, 568 F.3d 844, 851 (10th Cir. 2009). Moreover, "[b]ecause aliens do not have a constitutional right to enter or remain in the United States, the only protections afforded are the minimal procedural due process rights for an opportunity to be heard at a meaningful time and in a meaningful manner." *Arambula-Medina v. Holder*, 572 F.3d 824, 828 (10th Cir. 2009) (internal quotation marks omitted).

Here, although the new IJ failed to state on the record that he had familiarized himself with Petitioner's case, there is no question that he had—among other record evidence, his twenty-five page oral decision is extremely detailed. Further, Petitioner does not identify any prejudice stemming from the IJ's failure to comply with § 1240.1(b), and without such, he cannot prevail on this due process claim. *Alzainati*, 568 F.3d at 851. *See also Medrano-Boggs v. Holder*, 485 F. App'x 873, 874 (9th Cir. 2012) (rejecting petitioner's claim that "the IJ deprived her of due process by failing to comply with 8 C.F.R. § 1240.1(b)" because petitioner could not

demonstrate resultant prejudice). Nor can Petitioner prevail on his claim that he was denied due process when the new IJ refused to allow Petitioner's brother to testify at Petitioner's merits hearing. Petitioner did not explain to the BIA and he does not explain to this court what information his brother would have provided or how the absence of his testimony prejudiced Petitioner's case, which is fatal to his claim, *Alzainati*, 568 F.3d at 851. *See* Pet'r Br. at 12 (asserting, without elaboration, that "the prejudice resulting from the . . . refusal to let this essential witness testify far outweighs any potential prejudice to the government").

### III. Conclusion

The petition for review is denied.

Entered for the Court


Stephen H. Anderson
Circuit Judge

- 11 -